46

In the Matter of PHILIP L. TOIA, as Commissioner of the New York State Department of Social Services, et al., Respondents, v EDWARD V. REGAN et al., Appellants. (And Another Proceeding.) (Appeal No. 1.)

In the Matter of PHILIP L. TOIA, as Commissioner of the New York State Department of Social Services, et al., Appellants, v EDWARD V. REGAN et al., Respondents. (Appeal No. 2.)

EDWARD V. REGAN, Individually and as County Executive of Erie County, et al., Respondents, v PHILIP L. TOIA, Individually and as Commissioner of Social Services of the State of New York, et al., Appellants. (Appeal No. 3.)

Fourth Department, September 10, 1976

*James L. Magavern, County Attorney,* for Edward V. Regan and others.

*Louis J. Lefkowitz, Attorney-General (John Dufur* and *Ruth Kessler Toch* of counsel), for Philip Toia and others.

MOULE, J. This proceeding is before the court on appeal from a judgment granting the petition of Philip L. Toia, as Commissioner of the New York State Department of Social Services, for an order under CPLR article 78 compelling the respondents, Edward V. Regan, as County Executive of Erie County; Richard J. Keane, as Chairman of the Erie County Board of Legislators; Erie County Board of Legislators; Alfreda W. Slominski, as Comptroller of Erie County; and Barry L. Van Lare, as Commissioner of the Erie County Department of Social Services, to appropriate funds for social welfare programs to be administered by the Erie County Social Services District as provided for under the Social Services Law. Special Term's judgment supersedes its earlier temporary restraining order which compelled the State Commissioner to provide interim funding for these social welfare programs pending determination of the proceeding.

Philip L. Toia, as Commissioner of the State Department of Social Services, originally commenced this article 78 proceeding by a petition and order to show cause seeking an order compelling respondents to appropriate the necessary funds for the admininstration of the home relief, aid to dependent children, medical assistance and day care programs in the County of Erie after it appeared that such necessary funds would be exhausted in a matter of days. This order to show cause was returnable the morning of the day following the service of the commissioner's papers upon respondents.

A regular meeting of the County Legislature was to be held during the afternoon of the return day and the agenda for the meeting included a proposed resolution to appropriate funds for the welfare programs in question. Accordingly, after hearing preliminary arguments, Special Tern adjourned the hearing until July 30.

The Legislature did not pass the resolution and further arguments were heard before Special Term on July 30. At that time petitioner renewed his motion for a temporary restraining order directing respondents to appropriate funds for the welfare programs and respondents orally moved for a temporary restraining order directing petitioner, Commissioner Toia, to provide funding for the programs pending a determination of the action. The hearing was adjourned until August 4, in order to allow respondents to submit papers in support of their motion to compel petitioner to provide interim funding of the programs, to make other motions, and, if they should deem advisable, to serve their answers at that time.

At the August 4 hearing the respondents served and handed up to the court their answer to the petition, together with affidavits and a proposed order to show cause. The answer challenged the validity of those provisions of the New York Social Services Law that impose on all counties one half of the non-Federal cost of the welfare programs in question. In addition, the answer alleged a counterclaim by the county as a municipal corporation, the County Legislature, the County Executive and the County Commissioner of Social Services, in their individual as well as official capacities, as counterclaim petitioners against Commissioner Toia, Governor Carey, Comptroller Arthur Levitt, Budget Director Peter Goldmark, Taxation and Finance Commissioner James H. Tully, Sr. and the State Department of Social Services as counterclaim respondents. The counterclaim petitioners sought to join the additional counterclaim respondents, who had not been joined in the petition, as parties to the proceeding, and additionally sought permanent declaratory and injunctive relief, a preliminary injunction, and a temporary restraining order requiring the State Commissioner to provide funding of the unappropriated local share (as well as the State share) of the welfare programs in question, pending determination of the motion for a preliminary injunction. The petitioners and counterclaim respondents will hereafter be referred to collectively as the State Commissioner, and the respondents and counterclaim petitioners as the county officials.

On August 4 Special Term granted an order joining the additional parties as counterclaim respondents, directing the State Commissioner to show cause at a hearing on September 7 why the county officials' motion for a preliminary injunction

should not be granted, and directing the State Commissioner by temporary restraining order to provide funding of the local as well as the State share of the welfare programs pending determination of the motion for a preliminary injunction. Special Term later also signed an order denying the State Commissioner's motion for a temporary restraining order requiring the county officials to provide such funding.

Immediately after entry and service of Special Term's order of August 4, which included the temporary restraining order requiring the State Commissioner to provide interim funding of the local share, the State Commissioner served and filed a notice of appeal and an affidavit of intention to move for permission to appeal from that order. On August 5 the county officials moved by order to show cause before a Justice of this court to vacate and declare void any stay of enforcement of Special Term's order claimed by the State Commissioner to have come into existence pursuant to CPLR 5519 (subd [a], par 1) by reason of the State Commissioner's notice of appeal and affidavit of intention. The State Commissioner was granted permission to appeal and the stay was vacated pending consideration by the full court on September 8. Similarly, the State Commissioner was granted permission to appeal from Special Term's order denying his motion for a temporary restraining order requiring the county officials to provide interim funding of the local share of the welfare programs, and consolidated that appeal with the appeal already pending.

Subsequently, the date of the hearing on the preliminary injunction was advanced to August 24 at which time Special Term, after conducting the hearing, reserved decision until August 30 when it granted the State Commissioner the relief he sought and denied the relief sought by the county officials. It is from such order that the county officials appeal.

In the initial proceeding the State Commissioner sought to compel the county officials to appropriate adequate funds for the administration of the home relief, aid to dependent children, medical assistance for needy persons and day care programs in the County of Erie under the Social Services Law. That the Social Services Law, as presently written, does so require the county officials to act is not seriously disputed. However, since these provisions form the core of the instant litigation, it is necessary to delineate the broad parameters of these provisions.

Erie County is a duly established county social services

district (Social Services Law, § 52; § 61, subd 3). As such, it bears ultimate responsibility for the administration of public assistance and care for its residents although it may share this responsibility, under certain circumstances, with other municipalities located within its territorial boundaries (Social Services Law, § 69). An important element of this responsibility is the mandatory duty of the county's board of supervisors "to make adequate appropriations * * * to provide the public assistance and care required by * * * [the Social Services Law]" (Social Services Law, § 88). Additionally, the county is specifically obligated to make deficiency appropriations, should the need arise, to fulfill its public assistance responsibilities with regard to both home relief (Social Services Law, § 93, subds 3, 6) and the Federally-aided programs of aid to dependent children and medical assistance (Social Services Law, § 92, subd 1, pars [a], [c]). The Social Services Law does provide for reimbursement by the State for 50% of the non-Federally reimbursed cost of these programs, including day care (Social Services Law, § 153, subd 1, pars [d], [e]; § 368-a, subd 1, par [d]; § 410-c, subd 1, par [a]). Further, the statute places the power over the administration and regulation of this system of public assistance and care largely in the hands of the State Department of Social Services and its commissioner (Social Services Law, §§ 17, 20, 34).

This legislative scheme, then, focuses day-to-day administrative duties upon the county social services districts while concentrating policy and rule-making authority in the State agency. It also establishes an affirmative burden upon the county social services districts to appropriate necessary funding for the operation of these public assistance programs but, then, eases this burden by providing for 50% State reimbursement of all such funding not otherwise subject to Federal reimbursement. Moreover, this scheme fits well within the scope of our State Constitution's mandate that: "[t]he aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine." (NY Const, art XVII, § 1.)

Despite this constitutional source of legislative authority, the county officials argue that those sections of the Social Services Law which provide that 50% of the non-Federal cost of public assistance must be borne by local governments under the circumstances presented in this case conflict with other

fundamental rights and benefits conferred by the State and Federal Constitutions and must, therefore, be invalidated. In short they allege that the 50% contribution ratio: first, will result in the imposition of local taxes in excess of the constitutional limit; second, violates the right of the county residents to effective self government and home rule; and, third, results in a denial of equal protection and due process rights under the Federal and State Constitutions.

To sustain these arguments the county officials must satisfy the heavy burden of overcoming the presumption of constitutionality which all legislative enactments enjoy *(Fenster v Leary,* 20 NY2d 309, 314; *Wiggins v Town of Somers,* 4 NY2d 215, 218; *Matter of Bronx Parkway Comm. v Hylan,* 119 Misc 785, affd 206 App Div 688, affd 236 NY 593). "While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt." *(Wiggins v Town of Somers, supra,* p 218; see, also, *Defiance Milk Prods. Co. v Du Mond,* 309 NY 537, 541; *Matter of Fay,* 291 NY 198, 206-207.)

As a procedural matter the State Commissioner seeks to raise the barriers of standing and subject matter jurisdiction against the constitutional claims sought to be litigated by the county officials. As to standing, whatever merit there may be to the State's contention that Erie County, as a creature of the State, has no privileges under the Federal Constitution which it may invoke in opposition to the will of its creator (see, e.g., *Williams v Mayor,* 289 US 36, 40 [CARDOZO, J.]) the county officials, petitioning the court in their individual capacities, have that standing generally accorded by our courts to taxpayers to challenge the constitutionality of legislative enactments *(Boryszewski v Brydges,* 37 NY2d 361, 364). As to the court's jurisdiction over the subject matter of the constitutional claims here put in conflict, we need only repeat that "the judicial process—since *Marbury v Madison* * * * [is] the classical means for effective scrutiny of legislative and executive action" *(Boryszewski v Brydges, supra,* p 364).

Turning then to the merits of the constitutional claims, the first argument raised by the county officials is that the continued imposition of 50% of the non-Federal cost of public assistance on local governments will force the county to impose taxes and expend revenues in excess of constitutional tax limits.

Section 10 of article VIII of the State Constitution provides in part that:

"the amount to be raised by tax on real estate in any fiscal year, in addition to providing for the interest on and the principal of all indebtedness, shall not exceed an amount equal to the following percentages of the average full valuation of taxable real estate * * *

"(a) any county, for county purposes, one and one-half per centum; provided, however, that the legislature may prescribe a method by which such limitation may be increased to not to exceed two per centum".

According to the county officials' argument, if the present assessment compels the county to tax real property at a rate higher than the current rate of 1.5% then the local contribution ratio provided for in the Social Services Law will result in the imposition of an oppressive and unconstitutional tax. In support of this argument the county officials submitted an affidavit from the county budget director which concluded that the county is perilously close to default on its financial commitments and that the 1977 tentative budget will require drastic cuts in spending programs as well as a substantial real property tax increase.

The county officials do not, however, either assert or prove that they are currently taxing real property at the maximum allowable rate. Indeed, an affidavit submitted by the State Commissioner from the Director of the Bureau of Municipal Research and Statistics indicates that in 1976 the county's tax assessment is approximately 34 million dollars less than the total permissible taxes of 1.5% of the real property valuation. The existence of this tax margin was not refuted by the county officials and their failure to do so, as Justice COOK pointedly noted, compels a finding that they have not sustained their heavy burden of proof on this issue. Consequently this constitutional attack must be rejected.

It is important to note that our rejection of this argument is based solely on the inadequacy of the county officials' proof. We do not reach the question of whether this argument, if properly supported by sufficient evidence, would require that the local assessment provisions of the Social Services Law be declared unconstitutional.

The second constitutional argument raised by the county officials is that the continued imposition of 50% of the non-Federal costs of welfare on local governments conflicts with the county's right to self government and home rule under article IX of the New York State Constitution. Specifically the

county officials allege that the rising local cost of public assistance, which in 1976 amounted to 56% of the total county budget, severely limits the availability of sufficient tax revenues for traditional county services and thus renders meaningless the county's right to manage its own local affairs.

Implicit in the county officials' argument is the assertion that the general right to effective self government is inviolate and that the State may not pass legislation which may to some extent interfere with that right. We do not, however, agree.

Article IX (§ 2, subd [b], par [2]) of the State Constitution specifically provides that the State Legislature "[s]hall have the power to act in relation to the property, affairs or government of any local government only by general law." Thus it is clear that upon enactment of a valid general law, the State Legislature may abridge the right of local governments to home rule (see *County of Orange v Metropolitan Transp. Auth.,* 71 Misc 2d 691, 703, affd 39 AD2d 839). The propriety, therefore, of the county officials' constitutional challenge rests upon whether the Social Services Law is in fact a general law.

Article IX (§ 3, subd [d], par [1]) of the State Constitution defines a general law as "[a] law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages." In reviewing the provisions of the Social Services Law, it is apparent that that statute is a general law. It applies with equal force to every local government within the State. It attempts to regulate the nature and extent of State contribution to local welfare commitments which is legitimately a matter of State-wide public concern. Thus although this law may indirectly touch upon the concerns of individual localities and affect their resolution, the rights of individual counties to govern their local affairs must yield to the State's legislative authority (see *City of Amsterdam v Helsby,* 37 NY2d 19; *County of Orange v Metropolitan Transp. Auth.,* 71 Misc 2d 691, 703, *supra).*

The final constitutional argument raised by the county officials is that the continued imposition of 50% of the non-Federal cost of welfare on the local governments results in a denial of the county's equal protection and due process rights under the State and Federal Constitutions. Here the county officials assert that due to Erie County's shrinking tax base and its high proportion of welfare recipients, the rigid 50%

State-wide assessments results in an unequal and discriminatory cost for the taxpayers of Erie County when compared to five other major urban counties outside New York City.

In analyzing the validity of the equal protection argument, it is important to note that the Supreme Court has set forth two distinct tests, whose applicability depends upon the nature of the right infringed upon as well as the existence of a discriminatory classification (see *San Antonio School Dist. v Rodriguez,* 411 US 1). Thus, in the case of invidious discrimination, i.e., where there is either a patently suspect classification or where the exercise of a fundamental constitutional right is at issue, strict judicial scrutiny is required (see *Shapiro v Thompson,* 394 US 618). However, where either of these two issues is not involved then the test is "whether [the legislative scheme] rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment" *(San Antonio School Dist. v Rodriguez, supra,* p 17).

In the instant case, the class allegedly discriminated against consists of the taxpaying residents of Erie County. This classification is not inherently suspect (see *Lindsay v Wyman,* 372 F Supp 1360, 1366, affd *sub nom. Beame v Lavine,* 419 US 806; *State of Wisconsin ex rel. Seehawer v Schmidt,* 363 F Supp 635, 636, affd 414 US 1105) and the test of strict judicial scrutiny is therefore inappropriate. Nor do the county officials allege the violation of any of their constitutionally protected individual rights. The test, therefore, to be applied here is whether the 50% contribution system rationally furthers a legitimate, articulated State purpose.

With respect to this test, it is clear that the aid, care and support of needy persons is not only a legitimate State purpose but also one which is mandated by section 1 of article XVII of the State Constitution. Thus the sole question presented here is whether the funding ratios established by the Social Services Law rationally advance that purpose.

Traditionally, the cost of public assistance has been deemed to be primarily a local burden. Thus, although eligibility and benefit standards are set by the State, the funding scheme implemented by the Social Services Law is not in the nature of an assessment against local revenues to finance a State program. Rather it is an attempt by the State to provide both State and Federal funds to subsidize an admittedly local

obligation. This analysis is further evidenced by the fact that individual counties must initially appropriate sufficient funds to support the entire cost of local welfare, subject to later reimbursement of the respective State and Federal shares.

Inasmuch as the State's contribution to welfare may be characterized as "a grant in aid of what is at least a partial municipal obligation" (Lindsay v Wyman, 372 F Supp 1360, 1370, supra), the framework for providing such grants need not be perfect. As stated by the Supreme Court in Dandridge v Williams (397 US 471, 485): "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v City of Chicago, 228 U.S. 61, 69-70."

Additionally, we find that the concentration of one half of the non-Federal cost at the local level rationally furthers the State's interest in providing the individual counties with a compelling incentive to administer the programs efficiently and to prevent abuses.

With respect to the county officials' due process argument, all that "due process demands [is] that a law be not unreasonable or arbitrary and that it be reasonably related and applied to some actual and manifest evil (Matter of Jacobs, 98 N. Y. 98, 110; Fisher Co. v. Woods, 187 N. Y. 90; Nebbia v. New York, 291 U. S. 502)." (Defiance Milk Prods. Co. v Dumond, 309 NY 537, 541, supra; see, also, Montgomery v Daniels, 38 NY2d 41.) For the reasons set forth under our analysis of the equal protection issue we find that the challenged provisions of the Social Services Law are rationally related to the effectuation of the general policy concerning the "aid, care and support of the needy" as contained in section 1 of article XVII of the New York State Constitution.

Granting the order requiring the State to fund the county's share of local welfare costs pending the outcome of the litigation and subject to reimbursement by the county in the event of the State's success was a matter of judicial discretion and

did not affect the merits as to which governmental entity is ultimately responsible for these costs. The questions, however, presented to us on this appeal concern this very issue of ultimate responsibility. To this extent our determination may not be based on judicial discretion but rather must be decided on the basis of the Federal and State Constitutions as well as the applicable State statutes.

The fact that a better system of funding public assistance may be developed in no way affects the constitutionality of the system challenged here. Although alternative systems may result in a more equal and fairer distribution of limited public funds and in a more efficient administration of the welfare system, this does not mean that the system presently provided by law is violative of any provision of the Federal or State Constitutions. Since the present system has been properly established by a legislative process, any change in it must be made through the same process and cannot be made by the courts.

The judgment appealed from should be affirmed and the county officials directed to reimburse the State for funds advanced pursuant to any prior court orders herein. Permission is granted under CPLR 5602 for leave to appeal to the Court of Appeals.

MARSH, P.J., SIMONS, GOLDMAN and WITMER, JJ., concur.

Appeal No. 1—Judgment unanimously affirmed without costs and the county officials directed to reimburse the State for funds advanced pursuant to any prior court orders. Leave to appeal to the Court of Appeals granted.

Appeal No. 2—Order unanimously dismissed as moot.

Appeal No. 3—Order unanimously dismissed as moot.