OPINION OF THE COURT
Harold Hyman, J. motion no. I
This is one of several motions and cross motions made by certain of the parties defendants and plaintiff in the above-entitled matter. The present motion, made pursuant to CPLR 3211 to dismiss the complaint, or in the alternative, requiring plaintiff to serve an amended complaint containing a more definite statement, is made by defendants Ochs, Schindler and Abraham Frankel.
In order to better understand the tenor and purpose of these motions, a full and complete understanding of what is intended by the plaintiff’s lengthy complaint (containing 106 paragraphs and allegedly setting forth 12 causes of action) becomes necessary.
The complaint alleges that the New York State Depart *107 ment of Health, a State agency (hereinafter, agency) has jurisdiction over nursing homes, their services, accommodations, licensing, registration of their operators and administrators, and the determination of the Medicaid reimbursement rate applicable to their operations; to oversee the Medicaid program, and to make reimbursement payments to such homes in accordance with the rate established by said department; that Surfside Nursing Home is such a facility (hereinafter, Surfside); that defendants all participated in a common scheme or plan to defraud the State by making certain unnecessary or excessive disbursements and payments and then making claim for reimbursement of such improper expenditures from Medicaid "and * * * of public monies” from the State; that defendant, Surfside, was required to file certain reports with the agency, and that it did so for the years 1969 through 1976 to obtain Medicaid reimbursement of public funds based upon its report of expenses part of which it was not entitled; that said reports were filed and relied upon by the agency and will continue to be used and relied upon as a basis of establishing the financial condition and results of its operations for the years then ended and for Medicaid reimbursement rates for said facility for the period 1970-1978 inclusive. There are many other allegations in the first cause of action which clearly indicate a different type of liability, than the primary one of "conspiracy to defraud”, in its reference to certain named defendants and which clearly exclude other defendants.
Therefore, in considering the first motion of defendants Ochs, Schindler and Abraham Frankel for the alternative relief requested, namely, to have plaintiff serve an amended complaint containing a more definite statement (CPLR 3024, subd [a]), this court is inclined to agree with movants. There is such an admixture of allegations and different charges against all defendants as opposed to relating only as to individual defendants in said first cause of action, that it is difficult to separate the separate charges against each separately named defendant at this time, and, it would certainly tax the trial court at the time of trial. This is not to say that the complaint does not set forth a sufficient cause of action, for, in the court’s opinion, it does, but it should be made clear and definitive as to each defendant and refer strictly to each defendant, and not be comingled with other actions or causes in which a named defendant is not involved or charged.
*108 Simplicity in pleading is the key word and intent of the CPLR and not obvolution which cannot be curable merely by amplification through the medium of a bill of particulars. A defendant should not need a bill of particulars for such purpose.
The motion of defendants afore-named is granted to the extent that plaintiff is directed to serve an amended complaint separately stating and numbering its causes of actions against each defendant within 90 days from the date of service of a copy of the order to be entered hereon, with notice of the entry thereof.
motion no. II
This second motion poses a different and more important problem than that posed in motion No. I. This motion is made by the persons individually and who also are partners of Surfside Nursing Home. Although the motion is not made by all of the defendants named in this action, there is no doubt that a determination of this motion necessarily affects all parties, plaintiff and defendants, in the action.
This motion (No. II) contends that plaintiff is "not the real party in interest” and therefore that it (the State) may not maintain this action for reimbursement for such overpayments.
It is movants’ contention that Surfside, a residential health care facility, provides services under title XIX of the Social Security Act (United States Code, tit 42, § 1396 et seq. the Medicaid Act); that Medicaid has its base in a "Federal Grant-in-Aid Program” which provides for the United States Government to reimburse 50% of the amount spent for Medicaid patients to those States which have an approved Medicaid plan, with the State paying 25% of such aid, the balance of the cost borne by local (county) social service districts. „
Movants’ contention is that: (a) the "facility” provides the service to the aided patient: (b) the facility bills the local (county) social service district: (c) the "District” pays the facility: (d) the State reimburses the (county) district 75% of such expenditure of which 50% is by grant of the Federal Government, and 25% State contribution.
Movants contend that: (a) the "rate” is fixed and certified for each patient per day by the agency as to each facility: (b) the Director of the Budget of "State” then approves such rate: *109 (c) the Commissioner of Social Services (State) directs the rate be paid»;' but, (d) the local social service district (City of New York is considered as a separate and distinct district) makes the payment to the facility. Movants therefore contend that since; payment to the facility is made directly by Social Services of the district (Federal grant and State contribution to the extent of 75% thereof, and balance by district) no payments were actually made by plaintiff and therefore plaintiff is not the "real party in interest”. This is not entirely correct.
There is no clearly defined rule by which one may determine who is or is not the "real party in interest”, nor has there been found any concise definition of the phraseology. Who is the real party in interest depends upon the peculiar facts of each separate case. What is more, one may be "a party in interest” and yet not be the "sole” "real party in interest”. Ownership alone, or the right to ownership, does not furnish a reliable test, for while the owner of a chattel is the proper party to bring an action for its possession, or to recover damages for its injury, a party having no right of ownership but merely a special interest in the property accompanied by possession, such as a "bailee”, may also maintain an action for the same purpose; and there are other situations also. (Harrison v Marshal, 4 ED Smith 271; Paddock v Wing, 16 How Prac 547; Green v Clarke, 12 NY 343; Van Deusen v Young, 29 NY 9; Rood v New York & Erie R. R. Co., 18 Barb 80; Thomas v Crofut, 14 NY 474; Potter v Cromwell, 40 NY 287.) Nevertheless, there is one plausable test that may be applied and, that is: "will recovery or satisfaction of judgment by plaintiff bar all claims of all others?” (Borgos v Price, 140 Misc 287.)
It is the latter theory that this court believes is the one which should be applied in the instant matter, but the application of such theory requires further discussion and analysis, particularly in view of plaintiff’s unequivocal contention that the statutes involved clearly contemplate action by the State or the district, but not by both, for as plaintiff contends, "to hold otherwise, would result in unwarranted duplication of costs to the program”; and further, that the State has implied power to recover benefits improperly paid out (citing Matter of Fahey v Whalen, 54 AD2d 1097 as its authority).
This court, having read the record on appeal to the Appellate Division, Fourth Department, in the Fahey case aforementioned, cannot find any such intimation, as claimed by *110 plaintiff therein. In that case no claim was ever made by petitioner that the State was not a real party in interest regarding the proposed reimbursement procedure followed. It was merely "assumed” to exist by the petitioner therein without any consideration for the statutes involved vdiich specifically indicate the separate roles and contributions of t¡he Federal, State and the local district governments. It is here that I most respectfully depart from the unequivocal position of the State and also from the position taken by my esteemed colleague in that part of his decision (Matter of State of New York v Oxford Nursing Home, Supreme Ct, Kings County, March 9, 1978) wherein it was held that the State’s power to recover benefits improperly paid out under Medicaid to facilities had been judicially recognized by "implication” in Fahey. This would imply that the State has the power to recover the full, the "entire amount” allegedly paid out regardless of the source of such entire payment. In the present posture of this case and the statutes, it cannot be so held.
Medical assistance programs emanate out of Federal legislation (tit XIX, § 1901, added July 30, 1965; US Code, tit 42, § 1396) for the purpose of enabling each State to furnish medical assistance and services to those in need thereof and with lack of ability to pay therefor; for all intents and purposes the Federal Government makes a "grant” to any State that has Medicaid plans and programs approved by it; and title XIX (United States Code, tit 42, 1396a) provides for what the State plan must contain. Among others, such provisions require that: (1) it shall be in effect in all political subdivisions of the State, and if administered by them, be mandatory upon them; and, that there be (2) State financial participation with the Federal Government to the extent of not less than 40% of the non-Federal share. It is therefore apparent that to the extent of the grant received by the State from the Federal government (Social Services Law, § 363-a, subd 4) and the State’s own contribution or payment, both State and Federal Government are partners though unequal in shares; but it does not end there. The State is legislatively divided into county and city public welfare districts (Social Services Law, § 61), with the City of New York constituted a separate district by itself (Social Services Law, § 61, subd 1) and, by legislative mandate, each district is obliged to furnish such aid and assistance to resident persons eligible or found in its *111 district (Social Services Law, § 365, subd 1, pars [b], [c], [d], etc.) and, the State is required to reimburse each district by paying over to each district the Federal grant funds received by the State from the Federal Government on account of such district’s expenditures; and, the State contributing to each district one half of the balance left, nonreimbursed to the district, thus leaving the remaining one half not reimbursed to it to be paid by the local district out of its own local county funds obtained through local taxes (Social Services Law, § 368).
In Matter of Toia v Regan (54 AD2d 46, affd 40 NY2d 837) the claim was made by appellants (Regan, as County Executive of Erie County; the District) that the provision of the Social Services Law which imposes on all counties (District) one half of the non-Federal cost of the welfare programs, which included Medicaid, was unconstitutional; and, it was further contended by appellant District that the State commissioner could not compel the county officials to appropriate adequate funds for the administration of home relief, aid to dependent children, medical assistance for needy persons and day care programs in the County of Erie under the Social Services Law. The Appellate Division held (pp 49-50), and it was affirmed in the Court of Appeals, that the statutes were constitutional, and, further, that: "Erie County is a duly established county social services district (Social Services Law, § 52; § 61, subd 3). As such, it bears ultimate responsiblity for the administration of public assistance and care for its residents * * * (Social Services Law, § 69). An important element of this responsibility is the mandatory duty of the county’s board of supervisors 'to make adequate appropriations * * * to provide the public assistance and care required by * * * [the Social Services Law]’ (Social Services Law, § 88). Additionally, the county is specincally obligated to make deñciency appropriations, should the need arise, to fulñll its public assistance responsibilities with regard to both home relief (Social Services Law, § 93, subds 3,6) and the Federally-aided programs of aid to dependent children and medical assistance (Social Services Law, § 92, subd 1, pars [a], [c]). The Social Services Law does provide for reimbursement by the State for 50% of the non-Federally reimbursed cost of these programs * * *. Further, the statute places the power over the administration and regulation of this system of public assistance and *112 care largely in the hands of the State Department of Social Services and its commissioner (Social Services Law, §§ 17, 20, 34).
"This legislative scheme, then focuses day-to-day administrative duties upon the county social services districts while concentrating policy and rule-making authority in the State agency. It also establishes an affirmative burden upon the county social services districts to appropriate necessary funding for the operation of these public assistance programs but, then, eases this burden by providing for 50% State reimbursement of all such funding not otherwise subject to Federal reimbursement.” (Emphasis supplied.)
The above-cited case further holds (p 55): "Additionally, we find that the concentration of one half of the non-Federal cost at the local level rationally furthers the State’s interest in providing the individual counties with a compelling incentive to administer the programs efficiently and to prevent abuses.”
It is therefore apparent that by statute the local (county) district has its own moneys to protect as does the State to protect its contribution and, that although the State supervises the administration of the program, that nonetheless the moneys the State receives from the Federal Government as a "grant” is only held by it as a trustee for reimbursement to the local districts; this is so by virtue of our own (legislative) statutory plan. It would therefore appear to the court that the local (county) district (in this case the City of New York is one) therefore actually has a larger share of any claim for reimbursement than that of the State, although the State does have a financial interest in the amount involved and sought to be recovered, but that the State’s share is limited solely to the amount it personally and directly contributed of its own funds to the whole.
It is therefore further apparent that the State, in order to prosecute the present action upon a complete seeking of the "whole” amount paid to the facility is required to name and join in said action each district which may be involved including the City of New York either as a voluntary plaintiff (CPLR 1001, subd [a]; 1002, subd [a]) or, if any said district refuses, as party defendant (CPLR 1001, subd [a]), in order to obtain full relief between plaintiff and all defendants who might otherwise be inequitably affected by a judgment (CPLR 1001, subd [a]) to the end, that, if plaintiff be successful, a proper allocation of the recovery may be made by State to *113 itself and to the districts involved and thus prevent a multiplicity of suits, and to thus also protect defendants from being called upon to pay twice, that is, so that satisfaction of a judgment in this action shall be in full payment of the entire indebtedness.
Of course, should plaintiff refuse to amend its complaint along the lines specified above, then except for the amendment mentioned in motion No. I (decided simultaneously herewith) the State shall be limited to recovery of only such reimbursement moneys it personally contributed to each district as such, and not the amount it received as a "grant” from the Federal Government and ultimately turned over to each district (see Social Services Law, § 145-b, subd 2).
The court is fully aware of the State’s contention that to proceed as above required for the "whole amount” may be imposing an arduous task upon plaintiff, but since it already has a complete audit it can only be a task which is far from being insurmountable based upon the records already in its possession and upon which this action is based. Also, the defendants are entitled to enforcement of every right, procedural or otherwise, provided by law, to the end that any judgment which they satisfy, if called upon to do so, will, as to such, bar all claims of others.
In view of the fact that the State does have a share in any over-all recovery to which it may elect to limit itself as to such moneys advanced by it to the local district as reimbursement "out of its own funds”, the court will not dismiss the complaint, instead it hereby grants leave to the State to elect the course it be advised to follow and, if so advised, amend its complaint accordingly, and to serve same within 90 days from the date of service of a copy of the order to be entered hereon, with notice of the entry thereof.
plaintiff’s cross motions
MOTIONS NOS. III AND IV DATED FEBRUARY 21, 1978 AND MARCH 7, 1978, RESPECTIVELY.
These motions seek: (1) to have certain defendants directed to answer the complaint, and (2) to have said defendants appear for depositions thereafter.
The court is aware of how diligent, but also frustrated, plaintiff’s counsel is at this time by the delay. Nevertheless *114 counsel is advised that it is better advocacy to tune down, better yet entirely keep out of the submission of papers unnecessary invective and vituperative remarks.
The second form of relief requested is premature and is therefore denied without prejudice to renewal after issue has been joined. The first request is denied in view of the court’s decision on motions I and II decided simultaneously herewith.
motion no. V
This motion is to dismiss the complaint against said movants made by defendants Leifer and Congregation Tifereth Israel.
In view of what has been said and decided with respect to the motions of the other defendants in motions Nos. I and II, simultaneously decided herewith, this court deems said decision to apply to the present motion, together with the relief granted with respect to motion No. I permitting plaintiff to amend its complaint, if so advised, within 90 days from the date of the receipt of service of a copy of the order to be entered hereon with notice of the entry thereof.