**Jean-Marie MAUCLET, Plaintiff,**

v.

**Ewald B. NYQUIST, Commissioner of Education of the State of New York, and New York State Higher Education Services Corporation, Defendants.**

**Alan RABINOVITCH, Plaintiff,**

v.

**Ewald B. NYQUIST, Commissioner of Education of the State of New York, et al., Defendants.**

Nos. Civ–75–73, 74 Civ. 1142.

United States District Court,
W. D. New York.

Feb. 11, 1976.

■■■■■■■■■■■■■■■■

Kevin Kennedy, Michael Davidson, Buffalo, N.Y., for plaintiff in No. Civ–75–73.

Louis J. Lefkowitz, Atty. Gen., State of New York (Douglas S. Cream, Asst. Atty. Gen., Buffalo, N.Y., of counsel), for defendants in No. Civ–75–73.

Stroock & Stroock & Lavan, New York City, for plaintiff in No. 74 Civ. 1142.

Louis J. Lefkowitz, Atty. Gen., State of New York (Robert S. Hammer, Asst. Atty. Gen., New York City, of counsel), for defendants Nyquist, and others in No. 74 Civ. 1142.

McNamee, Lochner, Titus & Williams, P. C., Albany, N.Y., for defendants New York Higher Education Assistance Corporation, and others in No. 74 Civ. 1142.

Before VAN GRAAFEILAND, Circuit Judge, JUDD, District Judge for the Eastern District of New York, and CURTIN, Chief Judge, Western District of New York.

CURTIN, Chief Judge:

*Mauclet v. Nyquist* was instituted by a resident alien in the Western District of New York; *Rabinovitch v. Nyquist* was brought by a resident alien in the Eastern District of New York. In both cases, New York Education Law § 661(3) (McKinney's Supp.1975),[1] which requires an applicant for New York State financial aid[2] to be a United States citizen or intend to become a citizen, was challenged as unconstitutional. The cases were consolidated and heard by a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284. The facts as set out below are not in dispute.[3]

Plaintiff Jean-Marie Mauclet, a resident of New York State since April 1969, is a graduate student at the State University of New York at Buffalo. He is a French citizen, married to an American citizen and father of an American citizen. He submitted an application for a tuition assistance award for the academic year 1974–1975 and satisfies all requirements for the award except citizenship.

Plaintiff Alan Rabinovitch, a Canadian citizen, has been a resident of New York State since 1964. In January 1973, Mr. Rabinovitch took the competitive Regents Qualifying Examination, and thereafter was informed by defendants University of the State of New York and the Board of Regents that he was qualified to receive a regents scholarship. Subsequently, Mr. Rabinovitch was informed that the offer of scholarship was withdrawn solely because he did not intend to become a citizen, as required by § 661(3).

Both plaintiffs seek a judgment declaring § 661(3) invalid, enjoining its enforcement and requiring defendants to process the plaintiffs' applications for assistance. In addition, plaintiff Rabinovitch requests damages for past monies withheld by defendants. Both plaintiffs ask for attorney fees and costs.

---

1. § 661(3), former § 602(2), provides, in pertinent part, as follows:

    Citizenship. An applicant (a) must be a citizen of the United States, or (b) must have made application to become a citizen, or (c) if not qualified for citizenship, must submit a statement affirming intent to apply for United States citizenship as soon as he has the qualifications, and must apply as soon as eligible for citizenship. (McKinney's Supp.1975.)

2. There are three general forms of student financial assistance: (1) General Awards, which include tuition assistance; (2) Academic Performance Awards, including regents scholarships; and (3) Student loans and loan guarantees. N.Y. Educ.Law §§ 667–680 (McKinney's Supp.1975).

3. Both plaintiffs motioned to amend their complaints to include the New York State Higher Education Services Corporation, an educational corporation formed in 1975, which coordinates the New York State financial aid programs. N.Y. Educ.Law § 652 (McKinney's Supp.1975). The motions were granted orally at the three-judge court.

Plaintiffs contend that § 661(3) denies to resident aliens the equal protection of the laws guaranteed by the fourteenth amendment, and conflicts with the comprehensive and preemptive congressional scheme regulating the entry and residence of aliens in the United States.

We must first resolve the preliminary question of standing. Clearly, plaintiffs have standing to contest the statute as it applies to the scholarship and tuition assistance award programs. However, defendants claim that plaintiffs do not have standing to challenge § 661(3) with respect to the student loan aspect of the program. Rabinovitch never applied for a student loan and Mauclet received one in the past, before he announced his intention not to become a United States citizen. At oral argument, the State admitted that had Rabinovitch applied for a student loan, and refused to make the required statement of intention to become a United States citizen, his application would have been refused. But the State apparently feels that the actual denial of an application is necessary to give plaintiffs standing to contest the constitutionality of § 661(3) as regards student loans. We do not agree.

Nothing would be gained by adjudicating the statute as it applies to all but one aspect of the assistance program. Both plaintiffs allege injuries from this statute. Both would be further injured were they to apply for student loans. We feel that this is a proper case in which to apply the expanded concept of standing and allow these plaintiffs to assert the rights of those aliens who are injured by this statute with regard to loans. *Eisenstadt v. Baird,* 405 U.S. 438, 443–446, [92 S.Ct. 1029, 31 L.Ed.2d 349] (1972); *Barrows v. Jackson,* 346 U.S. 249, [73 S.Ct. 1031, 97 L.Ed. 1586] (1953).

In *Graham v. Richardson,* 403 U.S. 365, [91 S.Ct. 1848, 29 L.Ed.2d 534] (1971), the Supreme Court declared:

[C]lassifications based on alienage, like those based on nationality or race, are *inherently suspect and subject to close judicial scrutiny.* Aliens as a class are a prime example of a "discrete and insular" minority . . . for whom such heightened judicial solicitude is appropriate. 403 U.S. at 372, [91 S.Ct. at 1852.] (Footnotes and citations omitted, emphasis added.)

The defendants maintain that the classification involved here is not based on alienage per se because only those aliens who do not wish to become citizens are denied assistance. The defendants emphasize that the applications of many resident aliens have been granted after these individuals either applied for United States citizenship or signed a statement agreeing to do so as soon as they were eligible. This argument defies logic. Those aliens who apply, or agree to apply when eligible, for citizenship are relinquishing their alien status. Because some aliens agree under the statute's coercion to change their status does not alter the fact that the classification is based solely on alienage.

Next the defendants argue that since education is not a fundamental or basic constitutional right, *San Antonio Independent School District v. Rodriquez,* 411 U.S. 1, [93 S.Ct. 1278, 36 L.Ed.2d 16] (1973), the standard of strict judicial scrutiny is inapplicable. But it is long settled that where a suspect classification is involved, strict scrutiny is to be invoked whether or not the right involved is fundamental. *Graham v. Richardson, supra,* [403 U.S.] at 375–376, [91 S.Ct. 1848.]

In the case *In Re Griffiths,* 413 U.S. 717, [93 S.Ct. 2851, 37 L.Ed.2d 910] (1973), in which a Connecticut rule excluding aliens from admission to the practice of law was struck down, the Supreme Court was explicit as to the burden a state must bear to justify the use of a suspect classification:

The Court has consistently emphasized that a State which adopts a suspect classification "bears a heavy burden of justification," *McLaughlin v. Florida,* 379 U.S. 184, 196, [85 S.Ct. 283, 290, 13 L.Ed.2d 222] (1964), a burden which, though variously formulated, requires the State to meet certain

standards of proof. In order to justify the use of a suspect classification, a State must show that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is "necessary . . . to the accomplishment" of its purpose or the safeguarding of its interest. 413 U.S. at 721–722, [93 S.Ct. at 2855] (footnotes omitted).

Defendants have failed to meet this burden. First they argue that the various forms of assistance are gratuities that can be distributed according to the sovereign's will. But the Supreme Court "has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.' " *Graham v. Richardson, supra,* [403 U.S.] at 374, [91 S.Ct. at 1853.] Next the State asserts that its interest in an educated electorate, fully able to participate in community political life, and the plaintiffs' refusal to accept the responsibilities of citizenship, are sufficient reasons for it to limit assistance to citizens and future citizens. For this proposition, the State cites *Spatt v. New York,* [D.C.], 361 F.Supp. 1048, *aff'd* 414 U.S. 1058, [94 S. Ct. 563, 38 L.Ed.2d 465] (1973), in which the State's requirement that its assistance could only be used at colleges and universities within New York State was upheld. It is doubtful that defendants' explanation would survive even the rational relationship test applied in *Spatt.*[4]

Although resident aliens may not vote, they pay taxes, register with the Selective Service, and "contribute in myriad other ways to our society." *In Re Griffiths, supra,* [413 U.S.] at 722, [93 S.Ct. at 2855.] In any case, the State has not demonstrated a compelling interest justifying its discriminatory classification.

§ 661(3) is therefore unconstitutional and defendants are enjoined from its enforcement. Defendants are directed to process plaintiff Mauclet's 1974–1975 tuition assistance application that was pending when he started this suit, and to re-qualify plaintiff Rabinovitch as a State regents scholarship recipient, as of the date his complaint was filed.

Having ruled on plaintiffs' fourteenth amendment claim, there is no need to reach plaintiffs' argument that § 661(3) is unconstitutional because it encroaches on the exclusive federal power over aliens.

■ Plaintiff Rabinovitch requests money damages in addition to injunctive relief. While declaratory and injunctive relief is appropriate, it is the opinion of this court that *Edelman v. Jordan,* 415 U.S. 651, [94 S.Ct. 1347, 39 L.Ed.2d 662] (1974), holding that the eleventh amendment barred the courts from ordering state officials to remit benefits wrongfully withheld from eligible welfare applicants, does not allow the award of money damages in this case.

So ordered.

---

**4.** The court in *Spatt* found no fundamental right or suspect classification invoking strict scrutiny, and therefore analyzed the State's interests under the rational relationship test. The court found that the State had a valid interest in encouraging gifted students to attend New York schools, in building a strong system of colleges within the State and in attempting to achieve an equalization of school financing costs between in-state and out-of-state students. None of the above mentioned interests are served by excluding qualified, tax-paying resident aliens.