**Gayle McQuoid HOLLEY, Individually and on behalf of James McQuoid, Norman McQuoid, Thomas McQuoid, Douglas McQuoid, Michael McQuoid, and Adelaine McQuoid, her minor children, Plaintiff,**

v.

**Abe LAVINE, as Commissioner of the New York State Department of Social Services, and James Reed, as Commissioner of the Monroe County Department of Social Services, Defendants.**

No. Civ–75–151.

United States District Court,
W. D. New York.

Feb. 1, 1979.

K. Wade Eaton, Greater Upstate Law Project, Monroe County Legal Assistance Corp., Rochester, N. Y., for plaintiff.

Robert Abrams, Atty. Gen. of the State of New York, New York City (Alan W. Rubenstein, Albany, N. Y., of counsel), for defendant State Commissioner.

Charles G. Finch, Chief Counsel, Rochester, N. Y. (Charles G. Porreca, Rochester, N. Y., of counsel), for defendant Commissioner of Monroe County Department of Social Services.

CURTIN, Chief Judge.

This case is before the court on remand from the Second Circuit to determine appropriate declaratory, injunctive and monetary relief. The plaintiff, a Canadian citizen, first entered the United States as a non-immigrant student. She subsequently gave birth to six children in this country. Sometime prior to August 1974, the plaintiff began receiving a grant of Aid to Families with Dependent Children [A.F.D.C.] for herself and her six children. In August 1974, the grant to plaintiff's household was reduced by one-seventh because a new state law and corresponding regulation rendered the plaintiff, an illegal alien, ineligible for assistance. N.Y.Soc.Serv.L. § 131–k; 18 N.Y.C.R.R. § 349.3. This determination was upheld by the Commissioner of the New York State Social Services Depart-

ment on December 19, 1974 after an administrative fair hearing. The reduction was effective on January 15, 1975.

On April 17, 1975, the plaintiff, suing individually and on behalf of her six minor children, filed a complaint in federal district court against Abe Lavine, the Commissioner of the New York State Department of Social Services (the state defendant), and James Reed, the Commissioner of the Monroe County Department of Social Services (the county defendant), respectively. The complaint, alleging jurisdiction under 28 U.S.C. §§ 1343 and 1331, and 42 U.S.C. § 1983, claimed that § 131–k was inconsistent with the Social Security Act and federal regulations and deprived the plaintiff of due process and equal protection in violation of the fourteenth amendment. Plaintiff sought declaratory relief, an injunction, and damages for the amount of benefits denied her household as a result of the operation of the state statute. She also requested a preliminary injunction requiring defendant Reed to restore her household's benefit level to its prior level pending final disposition of this action.

Motions to dismiss were submitted by both defendants, and on July 30, 1975, Judge Burke dismissed this action "for lack of jurisdiction over the subject matter and because the complaint [failed] to state a claim upon which relief [might] be granted." The dismissal was based on Judge Burke's finding that the defendants were not within the scope of § 1983, that the complaint asserted no substantial claim of unconstitutionality, and that the amount in controversy did not exceed $10,000, exclusive of interest and costs.

Judge Burke's dismissal of the complaint was reversed by the United States Court of Appeals for the Second Circuit in *Holley v. Lavine*, 529 F.2d 1294 (2d Cir.) (per curiam), *cert. denied*, 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976). The Second Circuit agreed that the amount in controversy did not exceed $10,000 and that consequently jurisdiction did not lie under 28 U.S.C. § 1331. *Id.* at 1295. However, the court found that the complaint stated a substantial claim of unconstitutionality within the scope of § 1983 and remanded the case to the district court to consider the plaintiff's statutory and regulatory claims and to convene a three-judge court, if necessary, pursuant to 28 U.S.C. § 2281. *Id.* at 1296.

On remand, both defendants answered, and all parties moved for summary judgment. Judge Burke granted the defendants' cross-motions and denied the plaintiff's motion for summary judgment as well as her request to convene a three-judge court to hear the constitutional claims.

The plaintiff appealed and again the case was reversed and remanded in *Holley v. Lavine*, 553 F.2d 845 (2d Cir. 1977). The Court of Appeals found that since the plaintiff had official assurance that she would not be deported, at least until her children were no longer dependents, she was "permanently residing in the United States under color of law" within the meaning of the pertinent eligibility regulation promulgated under the Social Security Act. *Id.* at 850. It also stated that its finding of inconsistency between state law and the applicable federal regulation mooted the issue as to whether state law, "if applied to preclude the payment of AFDC benefits to an alien not permanently residing lawfully in the United States, would violate the Fourteenth Amendment to the United States Constitution." *Id.* Accordingly, the court held that there was no reason to convene a three-judge court to consider plaintiff's constitutional claims. The case was again remanded to the district court with the following instructions:

> There remains to be considered by the District Court the appropriate form of injunction as well as issues of damages, [cf. *Edelman v. Jordan*, 415 U.S. 651, 667, n. 12, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)] and attorney's fees both in the District Court and in this Court. [See Civil Rights Attorney's Fees Awards Act of 1976, P.L. 94–559, 90 Stat. 2641; *Torres v. Sachs*, 538 F.2d 10 (2nd Cir. 1976).]
>
> Since it appears the original judge might have difficulty in putting aside previously expressed views, and reassign-

ment is advisable to avoid the appearance of prejudgment, the case will be remanded to the District Court for reassignment in keeping with the principles stated in *United States v. Robin*, 553 F.2d 8, 10 (2nd Cir., March 30, 1977).

Reversed and remanded for the issuance of an appropriate injunction, and for consideration of issues of damages and attorney's fees both in the District Court and in this Court.

*Id.*

On remand, the case was assigned to my part for determination of appropriate relief. The plaintiff seeks a declaration of the invalidity of the statute and an injunction against its enforcement as well as an award of damages, counsel fees, and litigation costs. The damages sought consist of the funds withheld from the plaintiff's public assistance grant as a result of defendant's decision of August 20, 1974.

The issues have been thoroughly briefed by all of the parties. Oral argument was held on May 23, 1978. On August 9, 1978, upon stipulation of the parties, reargument was held in light of the Supreme Court's recent decisions in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that local governing bodies are subject to suit as "persons" under § 1983), and *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (holding that 42 U.S.C. § 1988 does not violate the eleventh amendment), and the Second Circuit's decision in *Turpin v. Mailet*, 579 F.2d 152 (2d Cir. 1978).[1] In addition, supplemental briefs were filed with the court. After carefully considering the positions of the parties, I am prepared to rule on the plaintiff's request for relief.

## I. *DECLARATORY AND INJUNCTIVE RELIEF*

■ The Second Circuit in its second decision found that N.Y.Soc.Serv.Law § 131–k was inconsistent with the controlling federal regulation, 45 C.F.R. § 233.50, because

§ 131–k denied public assistance to New York residents "permanently residing in the United States under color of law." 553 F.2d at 851. Since it also stated that the plaintiff's status was highly unusual, in that she was an illegal alien with official assurance that she would not be deported, the defendants urge the court to limit declaratory and injunctive relief to the facts of this case. But in light of the Second Circuit's determination of inconsistency, I find no basis for doing so. *Cf. Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). Accordingly, § 131–k is declared invalid insofar as it denies public assistance to New York residents permanently residing in the United States under color of law, and the defendants are permanently enjoined from enforcing the statute.

## II. *DAMAGES*

A more difficult question is whether the plaintiff is entitled to recover retroactive welfare payments from the defendants. The plaintiff argues that damages can be awarded on a number of theories. For the reasons outlined below, I find that the state defendant is shielded from a damage award by the eleventh amendment, but that the county defendant is liable for retroactive payments.

## A. *STATE DEFENDANT*

■ The first theory asserted by the plaintiff against the state is that benefits withheld after the complaint was filed on April 17, 1975 can be awarded as ancillary to injunctive relief. In *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), however, the Supreme Court refused to characterize the damages sought in that case as a form of "equitable restitution," recoverable under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), without regard to the eleventh amendment. *D'Iorio v. County of Delaware*, 447 F.Supp. 229 (E.D.Pa.1978), to the

---

1. This case was vacated by the Supreme Court and remanded for reconsideration in light of *Monell v. Department of Social Services, supra.*

*West Haven v. Turpin*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See* discussion *infra.*

extent it holds otherwise, appears to be inconsistent with *Edelman*. *Mauclet v. Nyquist*, 406 F.Supp. 1233, 1236 (W.D.N.Y. 1976), did not expressly consider whether requalification of the plaintiff as a regents scholarship recipient as of the date the complaint was filed violated *Edelman*.

With the benefit of hindsight, it is clear that most of plaintiff's damages could have been avoided if the district court had correctly applied the law at the time that the plaintiff moved for preliminary relief. But this does not change the retroactive nature of a damage award at this stage of the proceedings. The plaintiff is not seeking a payment of state funds as a necessary consequence of future compliance with a federal court order but rather an award of public assistance payments wrongfully withheld in the past. This type of relief is barred by *Edelman*.

The second theory urged by the plaintiff is that she can recover all benefits wrongfully withheld from January 15, 1975 to April 27, 1977 without regard for the eleventh amendment under the cause of action alleged in the complaint directly under the fourteenth amendment. In support of this theory, the plaintiff cites *Turpin v. Mailet, supra*, which held that a remedy may be implied from the protective provisions of § 1 of the fourteenth amendment and that monetary relief is one of the remedies available.

Since oral argument, however, *Turpin* was vacated by the Supreme Court and remanded for consideration in light of *Monell v. Department of Social Services, supra*. *West Haven v. Turpin*, —— U.S. ——, 99 S.Ct. 554, 58 L.Ed.2d —— (1978). On remand, the Second Circuit concluded that

> under the very rationale of our prior opinion—there is no place for a cause of action against a municipality directly under the 14th Amendment, because the plaintiff may proceed against the City of West Haven under § 1983.

*Turpin v. Mailet*, 591 F.2d 426 at 427 (2d Cir. 1979). An additional difficulty with this argument is that it would require a finding of jurisdiction under 28 U.S.C.

§ 1331, which the Second Circuit rejected on the first appeal of this case because the amount in controversy did not exceed $10,-000. 529 F.2d at 1295. On remand, this court is bound by the Second Circuit's ruling.

A third theory asserted by the plaintiff rests on the Supreme Court decisions in *Monell, supra* and *Finney, supra*. In light of *Monell*, the plaintiff now has a cause of action under § 1983 against the state and county agencies. Based on *Finney*, the plaintiff argues that § 1983, like § 1988, is a statute which abrogates eleventh amendment immunity.

This argument assumes that *Edelman* has been overruled *sub silento* by the Supreme Court. However, two circuit courts which have considered this question in the wake of *Monell* and *Finney* have concluded that *Edelman* continues to bind federal courts absent a clearer statement from the Supreme Court allowing damage actions against the states under § 1983. *Skehan v. Board of Trustees*, 590 F.2d 470 (3d Cir. 1978); *Bogard v. Cook*, 586 F.2d 399 at 410 (5th Cir. 1978). These conclusions are fully supported by the opinions in *Monell* and *Finney*.

*Monell*, which found that a local school board was a "person" under § 1983, expressly states that its holding is "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Supra* 436 U.S. at 690 n. 54, 98 S.Ct. at 2036 n. 54. The reasoning in *Monell* is equally applicable to state agencies and it may be fairly read to subject state agencies to injunctive relief under § 1983, but at no point does the decision authorize an award of retroactive damages against the state.

In *Finney*, at least one member of the Court has indicated that the "foundations" of *Edelman* have been "significantly undermined." *Supra* 98 S.Ct. at 2579 (J. Brennan, concurring). But the majority opinion cites *Edelman* with approval and characterizes awards of attorneys' fees as noncompensatory litigation costs in order to avoid a conflict between the two cases. Moreover,

four of the Justices dissent on the ground that *Edelman* precludes an award of attorneys' fees under 42 U.S.C. § 1988. Although the present court does not agree on the proper interpretation of the eleventh amendment, it cannot be said that *Edelman* has been implicitly overruled. I therefore must reject the plaintiff's claim for damages against the state.

### B. *COUNTY DEFENDANT*

■ Different considerations apply in determining whether the plaintiff can recover damages from the county defendant. As a general rule, eleventh amendment immunity does not extend to counties and other local government units. *See, e. g., Moor v. County of Alameda*, 411 U.S. 693, 717–721, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). This was recognized by the Supreme Court in *Edelman, supra*, 415 U.S. at 667 n. 12, 94 S.Ct. 1347. Only if the county or similar municipal corporation is acting as an arm of the state does it share the state's immunity. *Mount Healthy Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). This rule is equally applicable to agencies of the county, such as local departments of social services and their commissioners.

■ The question at issue here is whether the state is the real party in interest in the action against the county commissioner and is determined by examining "the nature of the entity created by state law." *Mount Healthy, supra*. A number of factors have been considered by the courts. *Gallagher v. Evans*, 536 F.2d 899, 901 (10th Cir. 1976); *George R. Whitten, Jr., Inc. v. State University Construction Fund*, 493 F.2d 177, 179–80 (1st Cir. 1974); *Urbano v. Board of Managers*, 415 F.2d 247, 250–51 (3d Cir. 1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970); *Krisel v. Duran*, 258 F.Supp. 845, 849 (S.D.N.Y.1966), *aff'd per curiam*, 386 F.2d 179 (2d Cir. 1967), *cert. denied*, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968). However, the primary consideration in all of the cases, including *Mount Healthy*, is the extent to which the local agency or official is finan-

cially independent of the state. *See also Rothstein v. Wyman*, 467 F.2d 226, 236 (2d Cir. 1972), *cert. denied*, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973). In *Edelman, supra*, 415 U.S. at 663, 665, 93 S.Ct. 1347, the question was phrased in terms of whether a judgment against the defendant would inevitably be satisfied out of the general revenues of the state. This determination is a matter of federal law, and federal courts are not necessarily bound by state court decisions. *See, e. g., Savage v. Kibbee*, 426 F.Supp. 760, 765 (S.D.N.Y. 1976).

The plaintiff does not dispute that county social services departments are "arms of the state" for the purpose of administering federal welfare programs. This was established recently by the New York Court of Appeals in *Beaudoin v. Toia*, 45 N.Y.2d 343, 408 N.Y.S.2d 417, 380 N.E.2d 246 (1978), which held that a county department of social services has no standing to challenge a fair hearing decision of the State Commissioner of Social Services. Federal law in fact requires this result. 42 U.S.C. § 602(a).

But this does not resolve the issue. It is also well established that a judgment against a county department of social services or its commissioner in his official capacity does not bind the state and is not automatically payable out of state funds. *Toia v. Regan*, 54 A.D.2d 46, 387 N.Y.S.2d 309 (App.Div. 4th Dep't), *aff'd per curiam*, 40 N.Y.2d 837, 387 N.Y.S.2d 832, 356 N.E.2d 276 (1976); *Jones v. Berman*, 37 N.Y.2d 42, 371 N.Y.S.2d 422, 332 N.E.2d 303 (1975). The relationship between the state and the county agencies has been described in the following terms:

Erie County is a duly established county social services district (Social Services Law, §§ 52, 61[3]). As such, it bears ultimate responsibility for the administration of public assistance and care for its residents although it may share this responsibility, under certain circumstances, with other municipalities located within its territorial boundaries (Social Services Law, § 69). An important element of this responsibility is the mandatory

duty of the County's board of supervisors "to make adequate appropriations * * to provide the public assistance and care required by * * * [the Social Services Law]" (Social Services Law, § 88). Additionally, the County is specifically obligated to make deficiency appropriations, should the need arise, to fulfill its public assistance responsibilities with regard to both home relief (Social Services Law, § 93[3], [6]) and the federally-aided programs of aid to dependent children and medical assistance (Social Services Law, § 92[1][a], [c]). The Social Services Law does provide for reimbursement by the State for fifty percent of the nonfederally reimbursed cost of these programs, including day care (Social Services Law, §§ 153[1][d], [e], 368–a[1][d], 410–c[1][a]). Further, the statute places the power over the administration and regulation of this system of public assistance and care largely in the hands of the State Department of Social Services and its Commissioner (Social Services Law, §§ 17, 20, 34).

■ This legislative scheme, then, focuses day-to-day administrative duties upon the county social services districts while concentrating policy and rule-making authority in the state agency. It also establishes an affirmative burden upon the county social services districts to appropriate necessary funding for the operation of these public assistance programs but, then, eases this burden by providing for fifty percent state reimbursement of all such funding not otherwise subject to federal reimbursement.

*Toia v. Regan*, 387 N.Y.S.2d at 312.[2]

■ Under this scheme, county governments have an obligation to finance public assistance payments even if higher levels of government refuse to reimburse the county. *See, e. g., Jones v. Berman, supra.* Although in most cases state and federal funding is available for reimbursement, there is no clear rule requiring the state to indemnify the counties for judgments entered against them. Moreover, only fifty percent of the nonfederal share of public assistance payments under the A.F.D.C. program is reimbursed by the state. For these reasons, I find that the county defendant is not an arm of the state for eleventh amendment purposes.

This conclusion is supported by the Seventh Circuit's decision in *Mackey v. Stanton*, 586 F.2d 1126 (7th Cir. 1978), the only case directly in point brought to the court's attention. On similar facts, the court found that an award of retroactive public assistance benefits could be entered against a county social services agency and its officials in Indiana. It reached its conclusion by applying the analysis used by the Supreme Court in *Mount Healthy* to Indiana's funding scheme. Summarizing its analysis, the court stated:

> In all respects that the Supreme Court seemed to consider significant in Mt. Healthy, the county department here is similar to the school board in that case. Although both are subject to state supervision and depend heavily on state funds, they perform their duties on a local level. More important, both have the power to raise their own funds by tax levy and by bond issuance. Significantly, Ind.Code Ann. § 12–1–11–13 (Burns) is analogous to Ohio Rev.Code Ann. § 133.27 (Page), providing a manner for payment of judgments without resort to the state treasury.

Although the New York scheme differs from Indiana's in that county social services departments in New York must rely on local legislative bodies for funding, the power and the duty to raise and appropriate welfare funds nevertheless rest at the local rather than the state level. The only other significant difference between the New York and the Indiana schemes makes it clear that counties in New York are less dependent on state funds than counties in Indiana. Only 50% of nonfederal funds paid to A.F.D.C. recipients in New York are reimbursed by the state whereas in Indiana the state reimburses the counties for 100% of their expenditures. In New York, it cannot even be said that a judgment

---

2. The references to Erie County are equally applicable to Monroe County.

against the county social services commissioner is indirectly payable out of state funds.

Although it may seem unfair to hold local communities responsible for funding public assistance and for paying court-ordered awards of retroactive assistance at the same time that administrative policies are dictated by the state and federal governments, any unfairness is a consequence of the New York legislature's decision to place the responsibility for funding public assistance on the localities. The constitutionality of this scheme was upheld by the New York Court of Appeals in *Toia v. Regan, supra.* Under the federal A.F.D.C. program, each state is free to choose the administrative system most appropriate to its needs. *Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck*, 463 F.2d 620, 624 (2d Cir. 1972), *cert. denied*, 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973). A state that opts for direct state administration and financing presumably could assert the eleventh amendment as a complete bar to retroactive monetary liability in a case such as this. But New York has not chosen such a system.

The county defendant is directed to reimburse the plaintiff for public assistance benefits withheld as a result of the ineligibility determination at issue in this case.

### III. ATTORNEY'S FEES

The final issue before the court is the plaintiff's entitlement to an award of attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. For the reasons stated below, I find that the defendants are liable for a fee award under § 1988.

The Supreme Court's decision in *Finney* squarely rejected the main argument raised by the defendants against an award by holding that the eleventh amendment does not bar an award of attorneys' fees or costs against the state in § 1983 actions. The defendants now argue that it would be unfair to penalize them for their good faith efforts to implement the federal regulation, which they claim is ambiguous.

In § 1983 cases, fees should ordinarily be awarded to successful plaintiffs unless special circumstances would make such an award unjust. *Mid-Hudson Legal Services v. G. & U., Inc.*, 578 F.2d 34, 37–38 (2d Cir. 1978). *Zarcone v. Perry*, 581 F.2d 1039, 1044 (2d Cir. 1978), outlines the underlying factors to be considered in applying the *Newman-Northcross* rule to attorney's fees applications in § 1983 actions. These factors, when applied to this case, support the plaintiff's position.

The plaintiff sought and obtained broad equitable relief which will benefit resident aliens in addition to the plaintiff. Although the size of the group affected by this litigation may not be large, the claim involved significant federal rights. Because the plaintiff's claim did not involve substantial monetary damages and is one which many United States citizens would regard as unpopular, it is highly unlikely that the plaintiff could have retained other counsel to act on her behalf. The cost of this litigation and the time and effort required by plaintiff's counsel in order to bring the case to its conclusion, especially in light of the two appeals involved, plainly were disproportionate to any sum the plaintiff might reasonably have expected to recover on her own behalf. All of these circumstances justify an award of fees to the plaintiff. *Zarcone, supra; Mauclet v. Nyquist*, No. 75–73 (W.D.N.Y. Oct. 20, 1978).

The defendants have failed to point to any circumstances which would render an award unjust. Good faith alone does not preclude an award of attorney's fees. *Mid-Hudson, supra.* The risk of incurring liability for good faith mistakes in interpreting federal requirements is one of the risks which the state assumes when it participates in the federal A.F.D.C. program. Although the defendants argue that the federal regulation involved in this case is ambiguous, this litigation might have been avoided had the state enacted the federal language.

Finally, it is well established that attorneys who provide legal services for free or

for nominal rates are nevertheless entitled to recover fees under § 1988. *See, e. g., Mid-Hudson, supra; Beazer v. New York City Transit Authority,* 558 F.2d 97 (2d Cir. 1977). In light of all of these considerations and in the exercise of my discretion, I find that the plaintiff's motion for attorneys' fees should be granted.

The parties are directed to meet and attempt to agree upon a reasonable amount of a fee award and to report to the court in thirty (30) days from the date of this order.

So ordered.