Gayle McQuoid HOLLEY, Individually and on behalf of James McQuoid, Norman McQuoid, Thomas McQuoid, Douglas McQuoid, Michael McQuoid, and Adelaine McQuoid, her minor children, Plaintiff-Appellee-Cross-Appellant,

v.

Abe LAVINE, as Commissioner of the New York State Department of Social Services, and James Reed, as Commissioner of the Monroe County Department of Social Services, Defendants-Appellants-Cross-Appellees.

Nos. 1152–1154, Dockets 79–7182, 79–7190 and 79–7207.

United States Court of Appeals, Second Circuit.

Argued June 1, 1979.

Decided July 13, 1979.

**640**

K. Wade Eaton, Rochester, N. Y. (Greater Up-State Law Project, Rochester, N. Y.), for plaintiff-appellee-cross-appellant Gayle McQuoid Holley.

Alan W. Rubenstein, Principal Atty., Albany, N. Y. (Robert Abrams, Atty. Gen. of N. Y., Jeremiah Jochnowitz, Asst. Sol. Gen., Albany, N. Y., of counsel), for defendant-appellant-cross-appellee Abe Lavine, Commissioner of the New York State Department of Social Services.

Charles G. Porreca, Rochester, N. Y. (Monroe County Department of Social Services, Sam DiLalla, Acting Chief Counsel, Brooklyn, N. Y., of counsel), for defendant-appellant-cross-appellee James Reed, Commissioner of the Monroe County Department of Social Services.

Before FRIENDLY and FEINBERG, Circuit Judges, and NEAHER, District Judge.*

FEINBERG, Circuit Judge:

This case raises difficult issues of application of the Eleventh Amendment in suits involving welfare benefits. For reasons given below, we affirm a district court judgment that awards plaintiff such benefits retroactively against a County Social Services Commissioner, denies such an award against a State Social Services Commissioner and awards counsel fees to plaintiff against both defendants.

In April 1975, Gayle McQuoid Holley, individually and on behalf of her six children, sued Abe Lavine, then Commissioner of the New York State Department of Social Services, and James Reed, then Commissioner of the Monroe County Department of Social Services, in the United States District Court for the Western District of New

* Hon. Edward R. Neaher, of the United States District Court for the Eastern District of New York, sitting by designation.

York.[1] Plaintiff Holley was then (and presumably still is) an "illegal" alien, but her six children are all American citizens, since they were born in this country. Although plaintiff came here illegally, the Immigration and Naturalization Service for humanitarian reasons has allowed plaintiff to remain in this country, to prevent the separation of mother and children. Plaintiff's complaint sought an order requiring defendants to restore a one-seventh cut in benefits under the Aid to Families with Dependent Children (AFDC) program and invalidating section 131–k of the New York Social Services Law, insofar as it deprives certain illegal aliens of AFDC benefits.[2] In the period since plaintiff filed her complaint over four years ago, her case has twice been in both this court and in the Supreme Court, and she now appears here for the third time, on this occasion as appellee and cross-appellant. A brief summary of what has transpired follows.

In July 1975, the district court dismissed plaintiff's complaint for lack of jurisdiction and for failure to state a claim on which relief might be granted. This court reversed, holding that plaintiff had alleged a constitutional claim under 42 U.S.C. § 1983 substantial enough to confer jurisdiction under 28 U.S.C. § 1343(3). *Holley v. Lavine,* 529 F.2d 1294 (2d Cir.) (per curiam), cert. denied, 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976). Plaintiff's constitutional claim is that denial of AFDC benefits unfairly discriminates against those few "illegal" aliens in her unusual situation, denying equal protection of the laws to her in her own right and to her six children who,

although citizens, are also penalized by the reduction in household benefits. In our prior opinion, we noted that while only a three-judge court could, under the law at that time, decide this claim, plaintiff also alleged that section 131–k conflicts both with provisions of the Social Security Act[3] and with an HEW regulation.[4] The basis of this claim was that these require aid to be given to otherwise eligible persons who are aliens "lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law" and that plaintiff resides here "under color of law," because the immigration authorities have allowed her to stay. 529 F.2d at 1296. We further observed that the district court had "pendent jurisdiction" over these "claims of conflict between New York State and federal law," which a single district judge could decide. Id.

We remanded the case to the district court where all parties moved for summary judgment. The district court again decided for defendants, this time on the ground that the New York statute did not conflict with the Social Security Act and the regulation. Plaintiff appealed to this court, and we again reversed the judgment of the district court. *Holley v. Lavine,* 553 F.2d 845 (2d Cir. 1977), cert. denied, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978). We pointed out that "plaintiff is in what is almost certainly a minuscule sub-class of aliens who, although unlawfully residing in the United States, are each individually covered by a letter [from the Government] stating that [it] 'does not contemplate enforcing . . . [the alien's] . . .

---

1. For convenience only, we will call the County Commissioner the County defendant and the State Commissioner the State defendant.

2. New York Social Services Law § 131–k provides:
    1. Any inconsistent provisions of this chapter or other law notwithstanding, an alien who is unlawfully residing in the United States or who fails to furnish evidence that he is lawfully residing in the United States shall not be eligible for aid to dependent children, home relief or medical assistance.
    2. An otherwise eligible applicant or recipient who has been determined to be ineligible for aid to dependent children, home

relief or medical assistance because he is an alien unlawfully residing in the United States or because he failed to furnish evidence that he is lawfully residing in the United States shall be immediately referred to the United States immigration and naturalization service, or the nearest consulate of the country of the applicant or the recipient for such service or consulate to take appropriate action or furnish assistance.

3. 42 U.S.C. §§ 601, 602(a)(10) and 606(b)(1).

4. 45 C.F.R. § 233.50.

departure from the United States at this time.'" 553 F.2d at 849. We went on to hold that in this

> unusual situation where an alien parent has an official assurance that the parent will not be deported at least until the children are no longer dependent on that parent, such parent is "permanently residing in the United States under color of law."

Id. Therefore, section 131–k was, at least as applied to plaintiff Holley and her class, in conflict with the governing federal law, and the reduction in benefits was improper. On this theory, it was unnecessary to decide the equal protection issue. We again remanded the case to the district court (assigning it to another judge) to consider the appropriate form of injunction and issues of damages and attorneys' fees. 553 F.2d at 851.

In the district court, the case was reassigned to Chief Judge John T. Curtin. After further argument and briefing, the judge granted plaintiff's motion for a permanent injunction against enforcement of the applicable portion of section 131–k, directed the County defendant "to reimburse the plaintiff for public assistance benefits withheld as a result of the ineligibility determination,"[5] and awarded plaintiff counsel fees against both the State and County defendants.[6] However, on Eleventh Amendment grounds, the judge denied plaintiff an award of retroactive benefits against the State defendant. Judge Curtin's thorough opinion is reported at 464 F.Supp. 718 (W.D.N.Y.1977). On this third appeal to this court, the County defendant argues that the Eleventh Amendment also bars an award of benefits against him, as does the defense that he acted in good faith. Both defendants also offer various

reasons why the grant of attorneys' fees is not proper. Plaintiff cross-appeals, arguing that she should have been awarded back payments against the State defendant as well as against the County defendant, and offers an elaborate alternative theory to justify that result.

*Appeal of the County Defendant*

The district court held that the Eleventh Amendment did not bar an award of retroactive AFDC benefits to plaintiff against the County defendant. That Amendment, which has received increased judicial attention in the last decade, provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held that the Amendment prohibited that portion of a federal district court's decree that ordered Illinois state officials to pay retroactive public assistance benefits.[7] In this case, Judge Curtin relied on *Edelman v. Jordan* in refusing to grant damages against the State defendant but went on to hold that the County defendant is not an arm of the State for purposes of Eleventh Amendment immunity. The correctness of this ruling is the key issue on the County defendant's appeal.

We start with the proposition reaffirmed in *Edelman v. Jordan*, supra, 415 U.S. at 667 n.12, 94 S.Ct. at 1358 n.12, that "a county does not occupy the same position as a State for purposes of the Eleventh Amendment." The same footnote states that "while county action is generally state

---

5. The amount of plaintiff's damages was subsequently fixed at $1,400, in an amended judgment.

6. We are advised that the parties have agreed that the proper amount of attorneys' fees is $10,000. Under the circumstances, we are not disposed to take too technical a view on whether there now is an appealable final judgment under 28 U.S.C. § 1291. Cf. *Cinerama, Inc. v. Sweet Music, S. A.*, 482 F.2d 66, 70 n.2 (2d Cir.

1973); *Fase v. Seafarers Welfare & Pension Plan*, 589 F.2d 112, 114–15 n.3 (2d Cir. 1978).

7. The benefits were provided under federal-state programs of Aid to the Aged, Blind or Disabled (AABD). For Eleventh Amendment purposes we see no distinction between the AABD benefits in that case and the AFDC benefits here.

action for purposes of the Fourteenth Amendment," as plaintiff alleged here in her section 1983 action, "a county defendant is not necessarily a state defendant for purposes of the Eleventh Amendment." Id. Subsequently, in *Mt. Healthy City Board of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977), the Court characterized the relevant issue as whether the School Board defendant there was "to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or . . . as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." In the same passage the Court also stated that "[t]he bar of the Eleventh Amendment . . . does not extent to counties and similar municipal corporations." Since defendant James Reed, as Commissioner of the Monroe County Department of Social Services, is concededly an employee of Monroe County, it is arguable that this fact, under the Court's criteria, resolves the issue here. But defendants argue that local social services agencies, unlike counties, are considered to be "arm[s] of the State" since they are a part of, and supervised by, the State Department of Social Services.[8]

Defendants stress that in *Mt. Healthy*, supra, 429 U.S. at 280, 97 S.Ct. at 572, the Court pointed out that the answer to the Eleventh Amendment inquiry "depends, at least in part, upon the nature of the entity created by state law." According to defendants, we must first look to the New York State constitution, which provides that "[t]he aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine." N.Y.Const. art. 17, § 1. Thus, as defendants contend, the state legislature has been given the power under state law to control the public welfare system and to determine the manner and means of providing public assistance to the people in the state. The state legislature

has divided the state into "county and city social services districts," N.Y.Soc.Serv.Law § 61, of which Monroe County is one. And the responsibilities of a commissioner of a County Department of Social Services, like defendant James Reed here, are essentially to administer, N.Y.Soc.Serv.Law § 65, rather than to make, policy. Defendants tell us that the Monroe County Department of Social Services differs from other Monroe County departments because it has its own legal staff to handle welfare matters exclusively and, unlike the County of Monroe itself, is truly "an arm of the State."

■ These are substantial · arguments, and one does not speak with confidence in this complex and difficult area. See generally Baker, Federalism and the Eleventh Amendment, 48 U.Colo.L.Rev. 139 (1977). It is true that the state constitution gives great discretion to the state legislature in dealing with public assistance. But that legislature has seen fit to create local social service districts, which are required by law to provide for the "assistance and care of any person . . . who is in need of public assistance and care which he is unable to provide for himself." N.Y.Soc. Serv.Law § 62(1). Moreover, section 88 of the New York Social Services Law makes it "the duty of the board of supervisors of a county, the town board of a town and the appropriating body of a city to make adequate appropriations and to take such action as may be necessary to provide the public assistance and care required by this chapter." Although it is not completely clear from this language that "the public assistance and care required by this chapter" includes participation in the federally-assisted AFDC program as distinguished from general welfare payments, this seems to be assumed in *Jones v. Berman*, 37 N.Y.2d 42, 371 N.Y.S.2d 422, 332 N.E.2d 303 (1975). That the State controls the policies of the County Department of Social Services is not decisive on the Eleventh Amendment issue. In *Lake Country Estates, Inc.*

---

**8.** The State and County defendants offer similar arguments on this issue. For convenience, we will consider together the contentions of

both defendants and not distinguish between them.

*v. Tahoe Regional Planning Agency*, 440 U.S. 391, 400, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979), the Court noted that it has "consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'" Of much greater significance is the entity upon whom rests the primary obligation to make payments to the AFDC recipient, and as discussed below, that entity appears to be the County.

■ In minimizing the County's obligation, defendants emphasize that only 25 percent of the AFDC program is ultimately funded by the County since 50 percent is paid for by the federal government and 25 percent by the State. If anything, this cuts against defendants' argument. It is one thing to indulge in the semi-fiction that a state needs Eleventh Amendment protection for the full amount of a judgment against a state commissioner for past AFDC benefits, when half of the money will come back to the state from the federal government. The argument becomes strained when the judgment is against the County defendant and the State will eventually bear only 25 percent of the total. Defendants also argue that if New York State had chosen, as some states do, to administer public assistance payments directly rather than through county social services districts, the Eleventh Amendment would have been a bar and it is therefore capricious not to apply it here. But, as Judge Curtin correctly pointed out, "any unfairness is a consequence of the New York legislature's decision to place the responsibility for funding public assistance on the localities," 464 F.Supp. at 725.

Defendants also stress that the State advances money to the County in anticipation of reimbursable local expenditures for public assistance and care. But this is a matter of administrative convenience. It seems to us more important that the County defendant would be liable to an AFDC recipient even if the State did not advance the money. Monroe County has its own taxing authority, N.Y.Const. art. 8, § 10; N.Y. County Law §§ 233, 233–a(1), (4), is an independent political entity, N.Y. County Law § 3, appoints the local County commissioner who is a defendant here, County Law § 400(4)(b), and bears "ultimate responsibility" for public assistance payments. *Toia v. Regan*, 54 A.D.2d 46, 50, 387 N.Y.S.2d 309 (4th Dept.), aff'd, 40 N.Y.2d 837, 387 N.Y. S.2d 832, 356 N.E.2d 276 (1976), appeal dismissed, 429 U.S. 1082, 97 S.Ct. 1087, 51 L.Ed.2d 528 (1977). Moreover, "the county's duty to provide assistance is not dependent upon the receipt of equivalent money from the State and the cases have so held." *Jones v. Berman*, supra, 37 N.Y.2d at 55, 371 N.Y.S.2d at 431, 332 N.E.2d at 310. That the State chooses to reimburse the County defendant for 25 percent of the total retroactive payment should not be controlling on this issue.[9] We believe that Eleventh Amendment protection of the county defendant is not necessary "in order to protect the state treasury from liability that would have . . . essentially the same practical consequences as a judgment against the State itself." *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, supra, 440 U.S. at 400, 99 S.Ct. at 1177.[10] Under all the circumstances, we

**9.** Judge Curtin noted that
> Although in most cases state and federal funding is available for reimbursement, there is no clear rule requiring the state to indemnify the counties for judgments entered against them.

464 F.Supp. at 724.

**10.** Plaintiff and defendants each cite to us a different decision of the Seventh Circuit in support of their positions. In *Mackey v. Stanton*, 586 F.2d 1126 (7th Cir. 1978), cert. denied, 47 U.S.L.W. 3211 (Oct. 2, 1979) (No. 78–1733), the court held the Eleventh Amendment did not bar

a judgment against a county's welfare department. Conversely, in *Carey v. Quern*, 588 F.2d 230 (7th Cir. 1978), the Amendment was a bar. We regard these Seventh Circuit cases as inconclusive and distinguishable. *Mackey* dealt with an Indiana county's diversion of court-ordered child support payments which, in the absence of its action, would have gone to the beneficiaries. In *Carey v. Quern*, the public assistance taxes collected by the City of Chicago were paid into a special purpose trust fund and amounted to only five percent of total disbursements, the rest "supplied by the State of Illinois." 588 F.2d at 233 n.5.

conclude that the County defendant should not be treated as "an arm of the State" for Eleventh Amendment purposes.

■ The remaining contentions of the County defendant require less extended discussion. The claim is made that since the County Commission acted in good faith in relying on section 131–K, under such cases as *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), he should not be held liable. This defense was developed so that a public official, bound to take discretionary action of many sorts, often on short notice, should not be burdened by liability or fear of it because "of mistakes made in good faith in the course of . . . his official duties," *Wood v. Strickland*, 420 U.S. 308, 319, 95 S.Ct. 992, 999, 43 L.E.2d 214 (1975) (school officials); *O'Connor v. Donaldson*, 422 U.S. 563, 576–77, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (employee of state mental hospital); *Bivens v. Six Unknown Named Agents*, 456 F.2d 1339, 1347–48 (Medina, J.), 1348–49 (Lumbard, J.) (2d Cir. 1972) (on remand) (narcotics agents). Here, as we now know after years of litigation, Reed had no discretion; the money belonged to Mrs. Holley. There can be no good faith defense to a claim for AFDC benefits that have been found to be due and owing. Moreover, there should be no good faith defense to a claim for AFDC benefits that were wrongfully withheld, since such an award puts defendants in no worse position than if they had initially complied with their obligation. See Schnapper, Civil Rights Litigation After *Monell*, 79 Colum.L. Rev. 213, 252 (1979). Such benefits seem quite different from damages under 42 U.S.C. § 1983 for violation of constitutional rights of the sort involved in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Supreme Court alluded to the possibility of "some sort of official immunity" for "local government bodies." Id. at 701, 98 S.Ct. 2018.[11]

■ Finally, even if the Eleventh Amendment does not apply, we are urged to deny retroactivity under the criteria listed in the alternative holding in *Rothstein v. Wyman*, 467 F.2d 226, 232–36 (2d Cir. 1972), cert. denied, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973). We do not regard the district court's rejection of this argument as "an improvident exercise of its equity powers," id. at 236, in view of the insubstantial fiscal effect of giving a remedy to plaintiff's "minuscule sub-class" and the recognition by the New York courts of the propriety of retroactive relief in welfare benefits cases. See *Uhrovick v. Lavine*, 43 A.D.2d 481, 484, 352 N.Y.S.2d 529, 532 (3d Dept.), aff'd, 35 N.Y.2d 892, 364 N.Y.S.2d 890, 324 N.E.2d 360 (1974) ("to do otherwise would permit a state to violate Federal requirements with financial impunity . . . ."); *Martin v. Lavine*, 47 A.D.2d 731, 366 N.Y. S.2d 3 (1st Dept.1975), modified on other grounds, 39 N.Y.2d 72, 382 N.Y.S.2d 956, 346 N.E.2d 794 (1976); *Stewart v. Smith*, 57 A.D.2d 897, 898, 394 N.Y.S.2d 448 (2d Dept. 1977).

■ Turning to the award of counsel fees to plaintiff, the County defendant argues that in the interest of justice the district court should have denied such fees. The chief reasons given are that the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, was enacted after plaintiff

---

11. At the end of his opinion for the majority, Justice Brennan stated

    Since the question whether local government bodies should be afforded some form of official immunity was not presented as a question to be decided on this petition and was not briefed by the parties or addressed by the courts below, we express no views on the scope of any municipal immunity beyond holding that municipal bodies sued under § 1983 cannot be entitled to an absolute immunity, lest our decision that such bodies are subject to suit under § 1983 "be drained of meaning," *Scheuer v. Rhodes*, 416 U.S. 232, 248 [, 94 S.Ct. 1683, 40 L.Ed.2d 90] (1974). Cf. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397–98 [,91 S.Ct. 1999, 29 L.Ed.2d 619] (1971).

436 U.S. at 701, 98 S.Ct. at 2041.

Holley commenced her action, so that she had neither a need for such a fee to guarantee access to the courts nor a reasonable expectation of obtaining one; that the legal services available to plaintiff are federally funded; and that there was no bad faith by the County defendant here. But recent decisions of the Supreme Court and of this court make clear that none of these factors prevents an award of attorneys' fees as a matter of law. See, e. g., *Hutto v. Finney*, 437 U.S. 678, 693–700, 694 n.3, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Gagne v. Maher*, 594 F.2d 336, 345 (2d Cir. 1979), cert. granted, 48 U.S.L.W. 3189 (Oct. 2, 1979) (No. 78–1888); *Zarcone v. Perry*, 581 F.2d 1039, 1044 (2d Cir. 1978); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34 (2d Cir. 1978). Nor is it a bar to such an award that the district court never decided the constitutional issue that was the basis of jurisdiction under 28 U.S.C. § 1343(3). *Gagne v. Maher*, supra, 594 F.2d at 339–41. The attorneys' fees issue is committed to the discretion of the trial judge, id. at 345, who in this case pointed out

> The plaintiff sought and obtained broad equitable relief which will benefit resident aliens in addition to the plaintiff. Although the size of the group affected by this litigation may not be large, the claim involved significant federal rights. Because the plaintiff's claim did not involve substantial monetary damages and is one which many United States citizens would regard as unpopular, it is highly unlikely that the plaintiff could have retained other counsel to act on her behalf. The cost of this litigation and the time and effort required by plaintiff's counsel in order to bring the case to its conclusion, especially in light of the two appeals involved, plainly were disproportionate to any sum the plaintiff might reasonably have expected to recover on her own behalf. All of these circumstances justify an award of fees to the plaintiff.

464 F.Supp. at 725. We see no abuse of discretion here.

*Appeal of the State Defendant*

■ The State was successful below on its Eleventh Amendment claim and a number of its arguments on appeal are merely supportive of the County defendant's position. Thus, as already noted, the State defendant argues that since the County defendant is an arm of the State for Eleventh Amendment purposes, retroactive payments were improper and that an award of attorneys' fees against either defendant was inappropriate, particularly since the Eleventh Amendment, as the district court recognized, barred the damage award against the State defendant. We see no need to add to our previous discussion except to point out that *Hutto v. Finney*, supra, 437 U.S. at 693–98, 98 S.Ct. 2565, specifically rejected the latter argument. See also *Gagne v. Maher*, supra, 594 F.2d at 341–43.

■ At oral argument, the State also contended that under the Supreme Court's very recent decision in *Chapman v. Houston Welfare Rights Organization*, —— U.S. ——, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the district court did not have jurisdiction over plaintiff's claim that section 131–k conflicted with federal law. *Chapman* held that 28 U.S.C. § 1343(3) and (4) did not independently give federal district courts jurisdiction over such claims, confirming our earlier ruling in *Andrews v. Maher*, 525 F.2d 113 (2d Cir. 1975). But jurisdiction over the statutory claim here is not original, but pendent, as we held in our two prior opinions in this case. We do not read *Chapman* as barring the exercise of jurisdiction over the pendent claim here, which, as we see it, could be based upon either a federal or state cause of action. As to the former, it has generally been assumed that there is a federal cause of action to enforce the Social Security Act and HEW Regulations and that such "suits in federal court under § 1983" are proper, see *Edelman v. Jordan*, supra, 415 U.S. at 675–77, 94 S.Ct. at 1362; *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).[12] Although

---

**12.** Of course, since the cause of action does not meet the jurisdictional requirements of 28 U.S.C. § 1343(3), it has had to be presented as a pendent claim to another § 1983 cause of action

Justice Powell took the position in *Chapman* that there is no cause of action under section 1983 for violations of the Social Security Act, —— U.S. at —— – ——, 99 S.Ct. 1905 (Powell, J., concurring), only two other Justices joined in this view, while four Justices disagreed and two took no position.[13] The Justices did not deal with whether a private cause of action could be implied directly from the Social Security Act, see, e. g., *Cannon v. University of Chicago,* —— U.S. ——, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which a federal district court would have jurisdiction to hear under the general federal question statute, 28 U.S.C. § 1331(a). Of course, welfare benefits cases do not ordinarily involve $10,000 so that the jurisdictional amount requirement would generally not be satisfied in suits against state defendants.[14] But the absence of the jurisdictional amount should not be controlling here when the district court already has jurisdiction over the equal protection claim. Moreover, plaintiff also has a state cause of action. The State defendant itself points out that plaintiff could have sued in the state courts for wrongfully withheld benefits, see *Papadopoulous v. Shang,* 67 A.D.2d 84, 414 N.Y.S.2d 152 (1st Dept. 1977). Under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the district court had discretion to exercise jurisdiction over such a state cause of action. Certainly on these facts, the federal court is an appropriate forum to adjudicate the claim of conflict between federal and state law. See *Hagans v. Lavine,* 415 U.S. 528, 548, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974);

*Rosado v. Wyman,* supra, 397 U.S. at 422–23, 90 S.Ct. 1207; *Andrews v. Maher,* supra, 525 F.2d at 120. Cf. *Frost v. Weinberger,* 515 F.2d 57, 62 (2d Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976). See also Friendly, Federal Jurisdiction: A General View 123 (1973).

The State defendant also briefly attacks the scope of the declaratory and injunctive relief granted by the district court. The injunction requires the defendants to abide by the HEW regulation; indeed, the language of the order is the language of the regulation. We see neither failure to follow our earlier mandate nor overbreadth in this. The rest of the State's brief is an anticipatory defense to arguments of plaintiff in her cross-appeal, to which we now turn.

*Cross-Appeal of Plaintiff*

In her cross-appeal, which is concededly filed for protective purposes only, plaintiff argues at great length that the district court erred in not granting damages against the State as well as against the County. Plaintiff offers an elaborate theory to justify that result. First, she asserts her constitutional claim as an implied right of action based directly on the equal protection clause of the Fourteenth Amendment, under *Davis v. Passman,* —— U.S. ——, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and *Turpin v. Mailet,* 591 F.2d 426 (2d Cir. 1979) (en banc). She argues for the right to assert this implied action even though she has an explicit right of action under 42 U.S.C. § 1983 because under that section she cannot get

---

that asserts a violation of a right secured by the Constitution or any Act of Congress providing for equal rights, and therefore does meet the requirements of § 1343(3).

13. Justice Powell's opinion was joined by Chief Justice Burger and Justice Rehnquist. Justice White, also concurring, disagreed with Justice Powell on this point, as did Justice Stewart in his dissenting opinion, joined in relevant part, by Justices Brennan and Marshall. Justices Stevens and Blackmun did not find it necessary to reach the issue, see —— U.S. at ——, 99 S.Ct. 1905.

14. There is now no such an amount-in-controversy requirement for suits against federal defendants, see 28 U.S.C. § 1331(a), as amended by Pub.L.No. 94–574, § 2, 90 Stat. 2721 (1976). In 1978, the House of Representatives passed legislation that would remove the jurisdictional amount requirement in federal question cases, H.R. 9622, 95th Cong., 2nd Sess., 124 Cong. Rec. 1553, 1569 (Feb. 28, 1978), and both houses of Congress are currently considering such bills.

retroactive relief from the State. See *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Second, plaintiff deals with the problem of jurisdiction for this *Bivens*-type action as follows. General federal question jurisdiction under 28 U.S.C. § 1331 is unavailable because, as we have previously held, 529 F.2d at 1295, the jurisdictional amount is not met. However, plaintiff asserts that pendent jurisdiction is available and that the Fourteenth Amendment claim can be appended to her identical section 1983 claim, over which the district court had jurisdiction under 28 U.S.C. § 1343(3), which requires no jurisdictional amount. Next, plaintiff urges that the State's action in depriving her sub-class of illegal aliens of AFDC benefits violates the equal protection clause. Finally, she claims that the Eleventh Amendment does not protect states against damage actions brought directly under the Fourteenth Amendment.

Merely stating this complicated theory indicates the scope of the problems involved in ruling upon it. For example, decision for plaintiff would require at the very least determination of the equal protection question on the merits, something which none of the courts that have considered this case have done to date. It would also require holding that an implied right of action under the Fourteenth Amendment overrides the Eleventh Amendment. This would be a rather large extension of the Court's decision in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), that Congress, acting pursuant to section five of the Fourteenth Amendment, can override the Eleventh Amendment by manifesting an explicit intent to do so in a statute, Title VII in that case. Cf. *Jagnandan v. Giles,* 538 F.2d 1166, 1182–85 (5th Cir. 1976), cert. denied, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977). However, we see no persuasive reason to consider these matters. We have already concluded that plaintiff is entitled to a judgment against the County defendant for the same amount she could recover against the State defendant. Under the circumstances, we will leave to another day consideration of plaintiff's alternative theory.

In conclusion, on the appeal of the County and State defendants, we affirm the judgment of the district court in all respects. We dismiss plaintiff's cross-appeal. In our discretion, we direct that no additional amount for attorneys' fees and no costs be awarded to either party in connection with these appeals.