In the Matter of MARIE PAPADOPOULOS, as Administratrix of the Estate of CHRISTINE CHRISSOSPATHI, Deceased, Petitioner, v CARMEN SHANG, as Acting Commissioner of the New York State Department of Social Services, et al., Respondents.

First Department, March 13, 1979

APPEARANCES OF COUNSEL

*Philip M. Gassel* for petitioner.

*Joseph F. Wagner* of counsel *(Samuel A. Hirshowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General),* for State Commissioner, respondent.

## OPINION OF THE COURT

BLOOM, J.

The original petitioner, since deceased, brought this application to review a determination of the State Department of Social Services (State Department), dated September 6, 1977, affirming after an administrative hearing, a determination of the City Department of Social Services (City Department), limiting petitioner's medical assistance authorization to 30 days from May 18, 1976. The proceeding was brought originally in the Supreme Court, New York County, and transferred to this court by order dated February 25, 1978, pursuant to CPLR 7804 (subd [g]). Subsequent to the commencement of this proceeding, the original petitioner died, and by order dated January 22, 1979, her daughter, as administratrix, was substituted for her. However, all references hereafter made to petitioner will relate to the original petitioner.

Petitioner was a resident of Greece. She entered the United States on August 16, 1975 on a visitor's visa. She was, at the time, approximately 85 years of age and took up residence with her daughter, an American citizen, in New York County. On August 28, 1975, she applied to the Immigration and Naturalization Service (INS) for a change of status from that of visitor to that of permanent resident.

On February 2, 1976, while her application with INS was still pending, she suffered a stroke. She was removed to Metropolitan Hospital for emergency treatment and was thereafter taken to Bird S. Coler Hospital, where she remained until May 18, 1976. At the time of her discharge from the hospital, she was able to dress herself, ambulate and otherwise care for her personal needs. However, she was fragile, confused and in need of substantial care. Her daughter, who was separated from her husband and was employed full time, could not give her the necessary attention. Accord-

ingly, upon petitioner's discharge from the hospital, she was taken directly to the Florence Nightingale Nursing Home (Home). Applications for nursing home care made in anticipation of her discharge from the hospital were approved on May 19, 1976 and June 4, 1976.

On December 15, 1976, INS denied petitioner's application for a change of status to that of permanent resident. Review was sought of that determination. At the time of the commencement of this proceeding, that application for review was still pending. We are told that subsequent to the period covered by the record, the application for review was denied, but that under another provision of its regulations, INS was considering petitioner for deferred action status on humanitarian grounds.

By letter dated January 11, 1977, the City Department notified the Home that its obligation for Medicaid payments was limited to a period of 30 days from the date of petitioner's entry into the home. It is undisputed that that notice was not received by the Home until April 12, 1977. An administrative fair hearing was then sought and held. On September 6, the State Department affirmed the determination of the City Department. It is that determination which is here sought to be reviewed.

The Medicaid program originated as a plan designated to aid the needy sick. It is funded by the Federal Government with matching funds supplied by State and local governments. In order to be eligible for Federal funds, the State programs are required to meet minimum standards fixed by the Federal Government (US Code, tit 42, § 1396 *et seq.*). Necessarily, therefore, while each State has considerable leeway in fixing its own definition of need and in prescribing the level of benefits, Federal law governs the basis for qualifications *(King v Smith,* 392 US 309; *Holley v Lavine,* 553 F2d 845; cert den *sub nom. Shang v Holley,* 435 US 947).

Respondents base their denial of benefits to petitioner on subdivision 1 of section 131-k of the Social Services Law which, in pertinent part, provides that "an alien who is unlawfully residing in the United States" shall not be eligible for medical assistance. In so doing, however, it overlooks the provisions of 45 CFR 248.50, under which the Department of Health, Education and Welfare conditioned approval of the plan. That regulation specifies that any plan must be limited to eligible persons who are citizens of the United States, aliens

lawfully admitted to this country for permanent residence or otherwise *permanently residing* here under *color of law.* That regulation, in its application to the States, has the force of Federal law *(Massachusetts Gen. Hosp. v Sargent,* 397 F Supp 1056, 1061).

INS Operating Instruction OR 242 1 (a) (25) provides that where a petition for adjustment of status is pending "The District Director will not deport, or institute proceedings against, the beneficiary of the petition if approval of the petition would make the beneficiary immediately eligible for adjustment of status under section 245 of the Act". We are of the opinion that inasmuch as there was pending, at the time of the commencement of this proceeding, an application for adjustment of status and, under the operating instructions of INS, INS would not take any steps to effect the deportation of petitioner, she was at that time here present under color of law, inasmuch as she met the requirements of section 245 of the Immigration and Naturalization Act (US Code, tit 8, § 1255, subd [a]) for immediate eligibility to receive an immigrant visa for permanent residence (see US Code, tit 8, § 1151, subd [b]). By parity of reasoning, that would include the period subsequent to the final denial of her application for adjustment of status to permanent resident and while she was awaiting a ruling on whether she would be granted deferred status for humanitarian reasons.

In so holding, we are fortified by the ruling in *Holley v Lavine* (553 F2d 845, *supra)* which involved a regulation (45 CFR 233.50) identical in scope with the regulation here involved. There the plaintiff had entered this country from Canada at the age of 12 as a temporary nonimmigrant student. Thereafter, except for a period of three months, she resided continuously in the United States. Some five years after her entry, she married. Five children were born of that marriage, all in the United States. After she separated from her husband, a sixth child was born to her, also in this country. After the separation, she applied for and received assistance under the Aid to Families with Dependent Children Program (AFDC).

After the enactment of subdivision 1 of section 131-k of the Social Services Law, AFDC payments were stopped. Suit followed. While there is nothing in the court's opinion to indicate whether the plaintiff made application for a change of her status, the opinion indicates *(supra,* p 849) that INS sent a

formal letter to the New York State Department of Social Services, informing them that it did not contemplate " 'enforcing [her] departure from the United States at this time' " for humanitarian reasons.

In construing the term "color of law" the court *(Holley v Lavine,* 553 F2d 845, 849-850, *supra)* noted that it included "actions not covered by specific authorizations of law. It embraces not only situations within the body of the law, but also others enfolded by a colorable imitation. 'Under color of law' means that which an official does by virtue of power, as well as what he does by virtue of right. The phrase encircles the law, its shadows, and its penumbra. When an administrative agency or legislative body uses the phrase 'under color of law' it deliberately sanctions the inclusion of cases that are, in strict terms, outside the law but are near the border." With regard to the term "permanently residing" it added, "a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law" *(supra,* p 850).

Permanently residing under color of law, as so defined, is sufficiently broad to embrace within its ambit the periods during which petitioner resided at the home beginning with May 18, 1976 to the date of her death. So long as she was not subject to deportation either by reason of statute or regulation of the INS her residence at the home fell under the healing benediction of 45 CFR 248.50.

Accordingly, the determination of the respondent State Department of Social Services dated September 6, 1977 should be annulled, on the law, without costs or disbursements, and thereupon the determination of the City Department of Social Services should be reversed and vacated, and the matter remanded for an appropriate determination in accordance with this opinion.

Lane, J. P., Markewich and Lupiano, JJ., concur.

Determination of respondent State Commissioner, dated September 6, 1977, annulled, on the law, without costs and without disbursements, and thereupon the determination of the City Department of Social Services is reversed and vacated, and the matter remanded for an appropriate determination in accordance with the opinion of this court.