546 So.2d 1073 (1989)
Luisa SOLIS, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 88-2420.
District Court of Appeal of Florida, Third District.
June 6, 1989.
Rehearing Denied August 21, 1989.
Valory Greenfield and Paulette Ettachild, Legal Services of Greater Miami, Inc., for appellant.
Carmen Dominquez Frick, Miami, Dept. of Health and Rehabilitative Services, for appellee.
Before SCHWARTZ, C.J., and HUBBART and BASKIN, JJ.
SCHWARTZ, Chief Judge.
In 1985, the appellant arrived in the United States with her five minor children from their native Nicaragua. They were issued both I-94 identification cards and work authorization documents, see 8 C.F.R. § 208.4 (1985), by the Immigration and Naturalization Service, and now remain in this country awaiting and pending an INS decision on a duly filed application for political asylum. See 8 U.S.C. § 1158 (1985). She appeals from a decision of a public assistance hearing officer that, although eligible for Medicaid assistance,[1] she did not qualify for aid for dependent children (AFDC) solely on the ground of her alien status. This issue, in turn, depends on whether one in Ms. Solis's position is, as the pertinent statute requires, "permanently residing in the United States under color of law." § 409.026(1), Fla. Stat. (1987)[2]; see also *1074 Fla. Admin. Code Rule 10C-1.91. We conclude that the appellant does fall within this category and accordingly reverse the decision below.
Our conclusion to this effect is compelled by this court's totally indistinguishable decision in Alfred v. Florida Department of Labor and Employment Security, 487 So.2d 355 (Fla. 3d DCA 1986). In Alfred, we ruled that aliens who were present in this country under circumstances which  at least to some of the claimants  had substantially weaker official ties to this country than Ms. Solis were qualified for unemployment compensation benefits upon an identical statutory formulation of eligibility, that is, that the alien "is permanently residing in the United States under color of law." § 443.101(7), Fla. Stat. (1985).[3] After careful consideration of the applicable authorities, Alfred squarely  and contrary to each of the appellee's contentions  held that (1) one in Ms. Solis's situation resides here "permanently," Alfred, 487 So.2d at 357[4]; contra Sudomir v. McMahon, 767 F.2d 1456 (9th Cir.1985),[5] and (2) does so "under color of law," Alfred, 487 So.2d at 357, 358-59[6]; see also Alfred, 487 So.2d at *1075 359 (Schwartz, C.J., specially concurring)[7]; Sudomir, 767 F.2d at 1461. Since we must apply the same words to persons in the same status, it is impossible to justify a different result. Thus, the opposite decision reached below may not stand.
We are well aware of the divergent policy considerations which bear upon the Alfred issue of eligibility for unemployment compensation, which occurs only after a requisite period of work has already occurred, and those involved in determining AFDC benefits, which may become available immediately after the alien's arrival in this country without other independent standards of eligibility. We know too the far-reaching economic and political implications of this decision, which may result not only in a highly burdensome financial impact upon our state, as an involuntary host jurisdiction, but in a perhaps unfair division of responsibility for AFDC benefits between Florida and the federal government  the entity which is at least arguably responsible for the aliens' presence here in the first place.[8] Nevertheless, as judges, we may not consider these factors. Instead, we are permitted only to discern and apply the public policy adopted by those empowered to do so, the Legislature and Congress, by interpreting the words they have used to express their will. In Alfred, we have already read the operative phrase to include one like Ms. Solis within the status of those statutorily eligible to receive the benefits in question. We must do so again.
In light of the considerations stated in this opinion, it is certified that this decision involves the following question of great public importance:
Whether an alien residing in this country pending her application for political asylum is eligible for AFDC benefits as one "permanently residing in the United States under color of law" within the meaning of section 409.026, Florida Statutes.
Reversed, question certified.
NOTES
[1] As is referred to infra at note 8, eligibility for Medicaid is founded upon the identical provision of § 409.026, Fla. Stat. (1987), which governs AFDC benefits, that is, that one is "permanently residing in the United States under color of law."
[2] The statute provides:

(1) The department [of Health and Rehabilitative Services] shall conduct, supervise, and administer all social and economic services within the state which are or will be carried on by the use of federal or state funds or funds from any other source and receive and distribute food stamps and commodities donated by the United States or any agency thereof. The department shall determine the benefits each applicant or recipient of assistance is entitled to receive under this chapter, provided that each such applicant or recipient is a resident of this state and is a citizen of the United States or is an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law. [e.s.]
[3] Disqualification for benefits.  An individual shall be disqualified for benefits:
* * * * * *
(7) If the division finds that the individual is an alien, unless such alien is an individual who has been lawfully admitted for permanent residence or otherwise is permanently residing in the United States under color of law (including an alien who is lawfully present in the United States as a result of the application of the provisions of s. 203(a)(7) or s. 212(d)(5) of the Immigration and Nationality Act).... [e.s.]
[4] aliens who are lawfully present in the United States as a result of the application of sections 203(a)(7) or 212(d)(5) (i.e., parolees and conditional entrants) are permanently residing in this country under color of law as provided in section 443.101(7), Florida Statutes (1985) because their residency is with government knowledge and approval and is "permanent" until changed by other official INS action. See Holley v. Lavine, 553 F.2d 845, 850 (2d Cir.1977) (citing section 101 of the Act (8 U.S.C. § 1101(a)(31) which provides that "a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law"), cert. denied, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978).
Alfred, 487 So.2d at 357.
[5] To the extent that Sudomir is contrary to our holding on the "permanently" point (it is in accord on the "color of law" question), we do not agree with nor follow it. Indeed, we have already rejected that decision, which was decided in 1985, by rendering our contrary holding in Alfred in 1986. In doing so, we cited and specifically followed the contrary second circuit decision, which, like this case, involved AFDC benefits, in Holley v. Lavine, 553 F.2d 845 (2d Cir.1977), cert. denied, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978). See Alfred, 487 So.2d at 357.
[6] the deportable aliens are "permanently" residing in the United States under color of law until a final determination of deportability is made following a hearing pursuant to 8 U.S.C. § 1252(b). The phrase "under color of law" includes "actions not covered by specific authorizations of law." Holley, 553 F.2d at 849. The discretionary refusal of the INS to use its enforcement powers to deport an alien also constitutes action "under color of law." Id. at 850. See also Papadopoulos v. Shang, 67 A.D.2d 84, 414 N.Y.S.2d 152 (1979) (where a petition for adjustment of status is pending and, under its Operating Instructions, INS would not take any steps to effect the deportation of petitioner, petitioner was, during that period of deliberate INS inaction, present in the United States under "color of law").
* * * * * *
As to the remaining five appellants whose work authorizations have not been affirmatively revoked by INS, the State contends that they are ineligible for unemployment benefits under section 443.101(7), Florida Statutes (1985) because they are not permanently residing in the United States "under color of law." The argument is made that these five appellants cannot rely on the line of cases which hold that an alien resides in the country "under color of law" for the purpose of benefits where his application for lawful status is pending, see St. Francis Hospital v. D'Elia, 71 A.D.2d 110, 422 N.Y.S.2d 104 (1979), aff'd, 53 N.Y.2d 825, 422 N.E.2d 830, 440 N.Y.S.2d 185 (1981); Papadopoulos [v. Shang, 67 A.D.2d 84, 414 N.Y.S.2d 152 (1979)], or where INS has indicated that it does not intend to deport the alien under presently existing circumstances. See Holley. The State's reasoning is that in this case none of the five have applied for political asylum or residency and, further, INS has not indicated that it does not intend to exclude or deport them from the United States. We reject the argument.
Although the five appellants are subject to being excluded or deported at some time in the future, if the government pursues and prevails, they have, nevertheless, been given alien identification cards and authorizations to work, by or with the approval of INS, and thus are "otherwise ... permanently residing in the United States under color of law" as the phrase is defined by Florida law. The quoted phrase from section 443.101(7), Florida Statutes (1985) instructs that the State, and not INS, is to make the eligibility determination for the purpose of state unemployment benefits. According to the state statute, which is all that we need construe, all five appellants fall under the classification of aliens "otherwise ... permanently residing in the United States under color of law." Their eligibility must be presumed to continue until their status is changed by an affirmative INS action. (footnote omitted)
Alfred, 487 So.2d at 357, 358-59.
[7] wish only, by way of supplement to the conclusion that the appellants are in this country "under color of law," to point out that it is admitted that they cannot be excluded or deported without a prior hearing, the very existence and necessity of which establish that the government may not, and that they may, prevail. Since they have not yet been granted the required hearing, it inevitably follows that they are residing in the United States "under color of [the] law" which grants them that right.
Alfred, 487 So.2d at 359 (Schwartz, C.J., specially concurring).
[8] We do note, as we have indicated in note 1 supra, that, although the same policy considerations might seem to apply  as the operative language unquestionably does  as well to Medicaid as to AFDC benefits, the state has freely agreed to pay the former. Its refusal to pay the latter, since it cannot be based on any legal distinction, must be founded only on a political one which this court may not consider.